Filed 7/31/13  Brown v. Automobile Club of So. Cal. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PEGGY BROWN, | B241995 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC476762) |
| v. | |
| AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge.  Affirmed in part and reversed in part.

Frieda A. Taylor for Defendant and Appellant.

The Mirroknian Law Firm, Reza Mirroknian and Pedram A. Javanmardi for Plaintiff and Respondent.

_____

Plaintiff filed this action against her former employer, alleging that the termination of her employment violated the Fair Employment and Housing Act (FEHA) (Gov. Code, §§ 12900–12996) and the California Unfair Competition Law (UCL) (Bus. & Prof. Code, §§ 17200–17210). Plaintiff also alleged common law claims for wrongful termination in violation of public policy and intentional infliction of emotional distress.

The employer filed a motion to compel arbitration of plaintiff's causes of action based on a 2002 arbitration agreement and a successor arbitration agreement purportedly effective on January 1, 2005. Plaintiff opposed the motion to compel arbitration, arguing that the 2002 arbitration agreement was the applicable agreement, but both agreements were procedurally and substantively unconscionable.

The trial court found that the 2002 arbitration agreement was the operative agreement and that it was unconscionable. The court denied the motion to compel arbitration.

On appeal, the employer contends that plaintiff's causes of action were subject to arbitration under the 2002 arbitration agreement, the agreement is governed by the Federal Arbitration Act (9 U.S.C. §§ 1–16), and the trial court erred in finding the agreement to be unconscionable.

We conclude that, although the arbitration agreement is procedurally unconscionable, none of its terms is substantively unconscionable. Nevertheless, we also conclude that, in accordance with *Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303, any request by plaintiff for "public injunctive" relief is not subject to arbitration. Accordingly, we reverse the trial court's order with the exception of any request for a "public injunction."

# I

# BACKGROUND

The facts and allegations in this appeal are taken from the complaint and the papers submitted in connection with the motion to compel arbitration.

2

**A.     Complaint**

On January 10, 2012, plaintiff, Peggy Brown, filed this action.  The complaint alleged as follows.

On or about February 19, 2002, plaintiff commenced employment with defendant Automobile Club of Southern California (Auto Club) as a "claims representative."  At the time of hire, plaintiff was around 48 years old.  Throughout her employment, plaintiff received written performance reviews rating her as an excellent employee.  She also received pay raises.

In or around October 2005, plaintiff was promoted to the "Special Investigative Unit" in Los Angeles.  In 2007, she was transferred to the Valencia office.  She continued to receive excellent performance reviews.  In March 2010, plaintiff received her last written performance review, which indicated she "'fully achieves'" the objectives of her job and praised her for "'assist[ing] her teammates'" and for "'the level of maturity she brings.'"

Beginning in late 2009, plaintiff requested intermittent time off under the state Moore–Brown–Roberti Family Rights Act (CFRA) (Gov. Code, §§ 12945.1–12945.2, 19702.3) and the federal Family and Medical Leave Act of 1993 (29 U.S.C. §§ 2601–2654).  More specifically, plaintiff had blacked out and fainted at work, requiring that she take some time off to recover.  She returned to work after an absence of a few weeks.

In or around April 2010, plaintiff began experiencing "psychiatric disabilities and complications" resulting from adverse treatment at work by her supervisor.  Plaintiff complained about her supervisor's conduct, but the Auto Club took no action in response.  In May 2010, plaintiff was placed on a disability leave of absence by her physician.

During her leave of absence, plaintiff developed shingles in one of her ears, which eventually led to a diagnosis of Ramsay Hunt syndrome, an illness similar to Bell's palsy.  The Auto Club was kept informed of plaintiff's medical condition.  On January 10, 2011, one of plaintiff's physicians opined that plaintiff was gradually improving.

3

On or about January 14, 2011—approximately seven months after plaintiff began her medical leave—plaintiff received a letter from the Auto Club stating her employment had been terminated. She was 58 years old when discharged.[1]

The complaint contained eight causes of action: (1) employment discrimination based on disability or medical condition, in violation of the FEHA; (2) failure to engage in a timely, good faith interactive process to determine effective reasonable accommodations, in violation of the FEHA; (3) failure to provide reasonable accommodations, in violation of the FEHA; (4) retaliation for engaging in activities protected under the FEHA and the CFRA; (5) failure to take reasonable steps necessary to prevent discrimination, in violation of the FEHA; (6) wrongful termination in violation of public policy; (7) intentional infliction of emotional distress; and (8) violation of the UCL. The complaint prayed for compensatory damages, including backpay and front pay, punitive damages, injunctive relief under the UCL, and attorney fees.

## B. Motion to Compel Arbitration

On March 9, 2012, the Auto Club filed a motion to compel arbitration of plaintiff's causes of action. The motion was based on (1) an arbitration agreement dated February 18, 2002, bearing the signature, "Peggy Brown," and (2) a subsequent arbitration agreement, purportedly effective on January 1, 2005, which did not have a signature line for employees. The Auto Club argued: (1) both arbitration agreements satisfied the requirements set forth in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 (*Armendariz*); (2) the Federal Arbitration Act (FAA) (9 U.S.C. §§ 1–16) governed the interpretation and enforcement of the arbitration agreements; and (3) the litigation should be stayed pending the completion of arbitration.

---

[1] In its opening brief, the Auto Club states that it terminated plaintiff's employment because it "could no longer reasonably accommodate her complete absence for an indefinite amount of time and [plaintiff] was unable to return to work with or without accommodation."

On April 24, 2012, plaintiff filed opposition papers, contending: (1) both arbitration agreements were unconscionable; (2) the 2005 arbitration agreement did not apply to her; and (3) the request for injunctive relief under the UCL was not subject to arbitration because an injunction under the UCL benefits the public at large and does not redress harm to a plaintiff (see *Cruz v. PacifiCare Health Systems, Inc.*, *supra*, 30 Cal.4th 303). Plaintiff also submitted a declaration reciting that she was required to sign the 2002 arbitration agreement as a condition of employment and that she was not given an opportunity to negotiate any of its terms.

On May 7, 2012, the motion came on for hearing. The trial court expressed its view that the 2002 arbitration agreement, not the 2005 agreement, was applicable. The trial court then raised a legal issue that the parties had not briefed, noting that the 2002 arbitration agreement vested the arbitrator with the "exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement." The trial court indicated that, under such a clause, the arbitrator, not the court, might be the proper decision maker on the issue of unconscionability. The court requested that the parties submit additional briefing on this issue and continued the hearing on the motion to June 4, 2012. The parties filed supplemental briefs.

At the hearing on June 4, 2012, the trial court stated that the arbitration clause did not authorize the arbitrator to determine whether the arbitration agreement was unconscionable because the parties had not delegated that question to the arbitrator through "'clear and unmistakable'" language. The trial court went on to explain that it found the arbitration agreement to be procedurally and substantively unconscionable. On the subject of substantive unconscionability, the trial court faulted the agreement's discovery provision, which states: "Each party shall have the right to take the deposition of one individual and any expert witness designated by another party. Each party also shall have the right to make requests for production of documents to any party and to subpoena documents from third parties. Requests for additional discovery may be made to the Arbitrator . . . . The Arbitrator shall grant an order for such requested additional discovery that the Arbitrator finds the party requires to adequately arbitrate a claim,

5

taking into account the parties' mutual desire to have a fast, cost-effective dispute resolution mechanism."

By order signed on August 27, 2012, the trial court denied the motion to compel arbitration, reciting that the 2002 arbitration agreement was the "operative" agreement, and that the agreement was unconscionable because it was a contract of adhesion and contained overly harsh discovery limitations. The Auto Club appealed.

# II

# DISCUSSION

The parties agree on appeal that the 2002 arbitration agreement is the applicable agreement. Plaintiff contends that the 2002 agreement is governed by the California Arbitration Act (CAA) (Code Civ. Proc., §§ 1280–1294.2), not the FAA. She also contends the agreement is procedurally and substantively unconscionable.

We conclude that the agreement is governed by the FAA and that it is procedurally unconscionable. We further conclude, however, that none of the agreement's provisions is substantively unconscionable. In addition, any request by plaintiff for public injunctive relief under the UCL is exempt from arbitration. (See *Cruz v. PacifiCare Health Systems, Inc.*, *supra*, 30 Cal.4th at pp. 312, 315–316.)

## A. Applicability of the FAA

Plaintiff argues that the FAA does not govern the arbitration agreement because the Auto Club failed to produce any evidence in the trial court that her employment or a pertinent transaction involved interstate commerce. But the agreement had a choice-of-law clause, stating: "[T]he Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings pursuant to this Agreement."

In *Countrywide Financial Corp. v. Bundy* (2010) 187 Cal.App.4th 234, the arbitration agreement contained a choice-of-law clause identical to the one here, stating: "'[T]he Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings pursuant to this Agreement'" (*id.* at p. 247). As the Court of Appeal concluded in *Countrywide*: "[T]he parties have unambiguously agreed to enforcement of

6

the awards under the Federal Arbitration Act and we enforce *their choice of law determination*." (*Ibid.*, italics added.)

We therefore honor the parties' choice-of-law clause mandating the application of the FAA. (See *Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1116, 1121–1122; *Peleg v. Neiman Marcus Group, Inc.* (2012) 204 Cal.App.4th 1425, 1445–1448; see generally *Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 162–179.) Under the FAA, we apply the unconscionability doctrine adopted by California courts. (See *Peleg*, at pp. 1466–1467; *Lagatree v. Luce, Forward, Hamilton & Scripps* (1999) 74 Cal.App.4th 1105, 1118–1119; see also *Perry v. Thomas* (1987) 482 U.S. 483, 492, fn. 9 [107 S.Ct. 2520].)

## B. Doctrine of Unconscionability

"In 1979, the Legislature enacted Civil Code section 1670.5, which codified the principle that a court can refuse to enforce an unconscionable provision in a contract. . . . As section 1670.5, subdivision (a) states: 'If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.' Because unconscionability is a reason for refusing to enforce contracts generally, it is also a valid reason for refusing to enforce an arbitration agreement under [the California Arbitration Act], which . . . provides that arbitration agreements are 'valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.' The United States Supreme Court, in interpreting the same language found in section 2 of the FAA (9 U.S.C. § 2), recognized that 'generally applicable contract defenses, such as fraud, duress, or *unconscionability*, may be applied to invalidate arbitration agreements . . . .' . . .

". . . '[U]nconscionability has both a "procedural" and a "substantive" element,' the former focusing on '"oppression"' or '"surprise"' due to unequal bargaining power, the latter on '"overly harsh"' or '"one-sided"' results. . . . 'The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court

7

to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' . . . But they need not be present in the same degree. . . . [T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz*, *supra*, 24 Cal.4th at p. 114, citations omitted; accord, *Bruni v. Didion* (2008) 160 Cal.App.4th 1272, 1288–1289.) "The party resisting arbitration bears the burden of proving unconscionability." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 247.)

"'The procedural element of unconscionability focuses on two factors: oppression and surprise. . . . "'Oppression' arises from an inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice.'" . . . "'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." . . .'" (*Bruni v. Didion*, *supra*, 160 Cal.App.4th at p. 1288.)

"Of course, simply because a provision within a contract of adhesion is not read or understood by the nondrafting party does not justify a refusal to enforce it. The unbargained-for term may only be denied enforcement if it is also *substantively* unreasonable. . . . Substantive unconscionability focuses on whether the provision is overly harsh or one-sided and is shown if the disputed provision of the contract falls outside the 'reasonable expectations' of the nondrafting party or is 'unduly oppressive.' . . . Where a party with superior bargaining power has imposed contractual terms on another, courts must carefully assess claims that one or more of these provisions are one-sided and unreasonable." (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 88, citations omitted.)

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh *or* one-sided. . . . A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience."'" (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*, *supra*, 55 Cal.4th at p. 246,

8

citations omitted, italics added.) Simply put, the contract term must be either (1) overly harsh *or* (2) so one-sided as to shock the conscience. (See *id.* at p. 248, citing *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1213 ["substantive element . . . traditionally involves contract terms that are so one-sided as to 'shock the conscience,' *or* that impose harsh or oppressive terms" (italics added)].)

### 1. Procedural Unconscionability

Because plaintiff was required to sign the 2002 arbitration agreement as a condition of employment and was unable to negotiate its terms, the agreement was oppressive and procedurally unconscionable. (See *Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 796; *Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 114.) But the arbitration agreement was not """*hidden* in a *prolix* printed form""" (*Bruni v. Didion*, *supra*, 160 Cal.App.4th at p. 1288, italics added) and therefore did not involve an element of surprise. On the contrary, the arbitration agreement was a stand-alone document that addressed only one subject: the submission of disputes to binding arbitration.

### 2. Substantive Unconscionability

Plaintiff contends the arbitration agreement is substantively unconscionable in three respects. We discuss them in turn.

#### a. *The discovery restrictions*

The arbitration agreement states that both parties have the right to take the deposition of one individual as well as the deposition of any expert witness designated by the opposing party. Each party also has the right to make "requests for production of documents" and to "subpoena documents from third parties." But these limitations are not etched in stone. Either party can request that the arbitrator permit "additional discovery," and the request must be granted if the requested discovery is "require[d] to adequately arbitrate a claim." Nevertheless, plaintiff asserts that this discovery provision is unconscionable because of the limitation on the number of depositions. We disagree.

Limitations on discovery must be scrutinized because, in many cases, "'the employer already has in its possession many of the documents relevant to an employment

9

discrimination case as well as having in its employ many of the relevant witnesses.'" (*Fitz v. NCR Corp*. (2004) 118 Cal.App.4th 702, 716.) In the present case, however, it cannot be said that plaintiff has a greater need for discovery than the Auto Club. Plaintiff already possesses the relevant documents about her medical condition. She also has personal knowledge of the events leading up to her termination. Given the Auto Club's stated reason for terminating plaintiff's employment—it could not wait indefinitely for her to return to work, and she could not return to work with or without accommodation— neither party should find it necessary to conduct extensive discovery.

In *Armendariz*, *supra*, 24 Cal.4th 83, the Supreme Court recognized that "a limitation on discovery is one important component of the 'simplicity, informality, and expedition of arbitration.'" (*Id.* at p. 106, fn. 11.) The court held that employees "are at least entitled to discovery sufficient *to adequately arbitrate their [FEHA] claim*, including access to essential documents and witnesses, *as determined by the arbitrator(s)* . . . ." (*Id.* at p. 106, italics added.) And "[t]he arbitrator . . . must balance th[e] desirable simplicity [of arbitration] with the requirements of the FEHA in determining the appropriate discovery . . . ." (*Id.* at p. 106, fn. 11.)

In *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, the arbitration agreement incorporated the 1997 rules of the American Arbitration Association (AAA) for employment disputes. The AAA rule governing discovery provided: "'[T]he arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of the arbitration.'" (*Id.* at p. 1475.) The Court of Appeal rejected the employee's contention that the AAA rule was unconscionable, saying, "There appears to be no meaningful difference between the scope of discovery approved in *Armendariz* and that authorized by the AAA employment dispute rules . . . ." (*Roman*, at p. 1476.)

Similarly, in *Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, an appendix to the arbitration agreement contained a discovery provision, stating: "'Each party shall have the right to take the deposition of one individual and any expert witness designated

10

by another party. Each party also shall have the right to make requests for production of documents to any party. . . . ["[E]ach party shall have the right to subpoena witnesses and documents for the arbitration"] . . . . Additional discovery may be had where the Arbitrator selected pursuant to this Agreement so orders, *upon a showing of need.*" (*Id.* at p. 982, italics added.)

In rejecting the employee's unconscionability argument, the Court of Appeal explained: "The trial court found the [discovery] provision unconscionable because . . . '[t]he arbitration agreement allows each side the deposition of one natural person, and all expert witnesses. Beyond that, additional depositions are subject to a showing of "need" to the arbitrator. It is with this provision that the court finds a substantive flaw. . . .'

"We disagree with the trial court for two reasons. First, arbitration is meant to be a streamlined procedure. Limitations on discovery, including the number of depositions, is one of the ways streamlining is achieved. In *Armendariz*, the court stated that the parties are entitled to discovery sufficient to vindicate their claims. . . . The [*Armendariz*] court also acknowledged that discovery limitations are an integral and permissible part of the arbitration process. . . . '"[A]dequate"' discovery does not mean 'unfettered' discovery. . . . *Armendariz* specifically recognized that parties may agree to something less than the full panoply of discovery permitted under the California Arbitration Act . . . ." (*Dotson v. Amgen, Inc.*, *supra*, 181 Cal.App.4th at pp. 982–983.)[2]

We find that the discovery provision here is valid for the reasons given in *Roman* and *Dotson*. Further, the provision is virtually identical to the discovery language approved in *Armendariz*. (See *Armendariz*, *supra*, 24 Cal.4th at p. 106.) We reject plaintiff's assertion that the provision is invalid under *Fitz v. NCR Corp.*, *supra*,

---

[2] Under the CAA, the parties have the same rights to discovery as in a civil action. (See Code Civ. Proc., § 1283.05, subd. (a); *id.*, §§ 1985–1997 [addressing use of subpoenas]; *id.*, §§ 2016.020–2036.050 [addressing methods of discovery in civil actions].)

118 Cal.App.4th 702, and *Ontiveros v. DHL Express (USA), Inc.* (2008) 164 Cal.App.4th 494.)

In *Fitz*, the discovery provision stated: "'[T]he employee [has] the right to take the sworn deposition statements of two individuals and, in addition, any expert witnesses expected to testify at the hearing. All documents to be used as exhibits and a list of all potential witnesses will be exchanged at least two weeks in advance of the hearing. *No other "discovery"* ( i.e., depositions or demands for documents/information) *will be permitted* unless the arbitrator finds a *compelling* need to allow it. In determining whether a compelling need exists, the arbitrator will balance the interests of fairness and expediency; the arbitrator will only override the goal of achieving a prompt and inexpensive resolution to the dispute if a fair hearing is *impossible* without additional discovery.'" (*Fitz v. NCR Corp.*, *supra*, 118 Cal.App.4th at p. 709, italics added & omitted.)

The Court of Appeal concluded that the discovery provision was unconscionable because "[g]ranting the arbitrator discretion to determine whether additional discovery is necessary . . . is an inadequate safety valve. In deciding whether to allow additional discovery, the arbitrator is constrained by an 'impossibility' standard. [The employer] attempts to analogize this impossibility standard to the *Armendariz* command that employees 'are at least entitled to discovery sufficient to adequately arbitrate their statutory claim.' . . . However, the arbitration clause does not permit discovery necessary to make a fair hearing possible, as [the employer] claims. It limits discovery to the depositions of two individuals and expert witnesses. To gain access to any additional information, a party must overcome the [arbitration] policy's constraint on the arbitrator, which permits him to 'only override the goal of achieving a prompt and inexpensive resolution to the dispute if a fair hearing is *impossible* without additional discovery.'" (*Fitz v. NCR Corp.*, *supra*, 118 Cal.App.4th at p. 717, citation omitted, italics added in *Fitz*.)

In *Ontiveros v. DHL Express (USA), Inc.*, *supra*, 164 Cal.App.4th 494, the discovery provision read: "'[E]ach party shall have the right to take the deposition of one

12

individual and any expert witness designated by another party. Each party also shall have the right to make requests for production of documents to any party. The [parties' "right to subpoena witnesses and documents for the arbitration"] shall be applicable to discovery pursuant to this paragraph. Additional discovery may be had only where the Arbitrator selected pursuant to this Agreement so orders, upon a showing of *substantial* need.'" (*Id.* at p. 511, italics added.)

In concluding that this discovery provision was unconscionable, the Court of Appeal explained: "[T]he [arbitration] agreement permits plaintiff to take the deposition of only one individual while plaintiff's trial counsel has estimated that plaintiff will need to take at least 15 to 20 depositions, given that '[t]he case involves harassing conduct directed at plaintiff at two job sites' and that 'the conduct took place from approximately 2000 to 2004 and involved numerous employees.' [The employer] has not disputed counsel's estimate. Moreover, the burden the agreement places on plaintiff to obtain further discovery is quite high, permitting additional discovery only by order of the arbitrator upon a showing of '*substantial* need.'" (*Ontiveros v. DHL Express (USA), Inc.*, *supra*, 164 Cal.App.4th at p. 513, italics added.)

Here, the arbitrator must grant a request for additional discovery if he or she "finds the party requires [the requested discovery] to adequately arbitrate a claim." This standard is not overly burdensome and is significantly different from the "compelling need" test in *Fitz* and the "substantial need" test in *Ontiveros*. Plaintiff "assume[s] that the arbitrator would not be fair in determining whether additional [discovery is] needed. . . . Indeed, it is quite the opposite. We assume that the arbitrator will operate in a reasonable manner in conformity with the law." (*Dotson v. Amgen, Inc.*, *supra*, 181 Cal.App.4th at p. 984.)

Plaintiff not only takes issue with the limitation on the number of depositions but also complains that the discovery provision does not permit the use of written methods of discovery such as interrogatories and requests for admission. We do not read the discovery provision so narrowly. The arbitrator is authorized to grant a party's request for "additional" discovery. "Additional" means "joining or uniting one thing to another."

13

(Black's Law Dict. (6th ed. 1990) p. 38, col. 1; accord, Webster's Third New Internat. Dict. (2002 ed.) p. 24, col. 2 [defining "addition"].) This definition is sufficiently broad to permit the arbitrator to increase the number of depositions and to permit methods of discovery other than the two expressly mentioned—depositions and requests for production of documents.

### b. *Scope of arbitration provision*

Plaintiff relies on *Murphy v. Check 'N Go of California, Inc.* (2007) 156 Cal.App.4th 138, 144–145, and *Ontiveros v. DHL Express (USA), Inc.*, *supra*, 164 Cal.App.4th at pages 503 to 505, for the proposition that an arbitration agreement is unconscionable if it delegates to the arbitrator the question of whether the agreement is unconscionable. We acknowledge that *Murphy* and *Ontiveros* reached that conclusion. Plaintiff asserts that, under *Murphy* and *Ontiveros*, the Auto Club engaged in unconscionable conduct by *attempting to draft* an arbitration agreement that would authorize an arbitrator, not a court, to determine whether the agreement was unconscionable. Although the trial court raised this question at the first hearing on the motion to compel arbitration and requested supplemental briefing on the issue, the court ultimately concluded that the arbitration agreement did not delegate the question of unconscionability to the arbitrator.

But regardless of what the Auto Club may have *attempted* to do, plaintiff cites no authority supporting a challenge to the arbitrability clause that was eventually adopted by the Auto Club. Also, under the FAA, the parties may vest the arbitrator, not a court, with the authority to decide whether an arbitration agreement is unconscionable as long as the parties do so in "clear and unmistakable" terms. (See *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. ___ [130 S.Ct. 2772, 2777–2779 & fn. 1].) Both *Murphy* and *Ontiveros* were decided before the United States Supreme Court filed its opinion in *Rent-A-Center*. Because the arbitration agreement in this case is governed by the FAA, the decision in *Rent-A-Center* is applicable, and the parties could have agreed that an arbitrator had exclusive jurisdiction to determine whether the arbitration agreement was unconscionable.

14

### c. Selection of neutral arbitrator

The arbitration agreement provides that "[t]he arbitration will be held under the auspices of a sponsoring organization, either the American Arbitration Association ('AAA') or Judicial Arbitration & Mediation Services ('JAMS'), with the designation of the sponsoring organization to be made by the party *who did not initiate the claim*." (Italics added.) According to plaintiff, this provision allows the Auto Club, when the responding party, to choose the sponsoring organization that has provided it with "favorable" service. Plaintiff reads this option as permitting the Auto Club to select an arbitrator who is biased against employees.

Plaintiff's argument ignores the provision in the arbitration agreement that describes how an arbitrator, as opposed to a sponsoring organization, is chosen. Regardless of whether the AAA or JAMS is the organization that will administer a claim, "[t]he sponsoring organization shall give each party a list of eleven (11) arbitrators drawn from its panel of employment dispute arbitrators. Each party shall have ten (10) calendar days from the postmark date on the list to strike all names on the list it deems unacceptable. If only one common name remains on the lists of the parties, that individual shall be designated the Arbitrator. If more than one common name remains on the lists of all parties, the parties shall strike names alternately from the list of common names until only one remains. The party who did not initiate the claim shall strike first. If no common name exists on the lists of all parties, the sponsoring organization shall furnish an additional list of eleven (11) arbitrators from which the parties shall strike alternately, with the party initiating the claim striking first, until only one name remains. That person shall be designated as the Arbitrator."

Plaintiff offers no legal authority or statistical evidence to support her contention that the arbitrator selection process will allow the Auto Club to choose an arbitrator who is biased against employees. The contention is therefore without merit.

15

## C.    Request for Public Injunctive Relief Under the UCL

In the complaint, plaintiff requests injunctive relief against the Auto Club under the UCL to prohibit it from discriminating against employees because of their age, disability status, health condition, or application for workers' compensation benefits.

Plaintiff correctly points out that in *Cruz v. PacifiCare Health Systems, Inc.*, *supra*, 30 Cal.4th 303, the Supreme Court held that a request for "public injunctive" relief under the UCL is not subject to arbitration.  When a plaintiff seeks a "public injunction" under the UCL, the request must be determined in a judicial forum.

As the Supreme Court explained:  "'[T]here are two factors taken in combination that make for an "inherent conflict" between arbitration and the underlying purpose of the [UCL]'s injunctive relief remedy.  First, that relief is for the benefit of the general public rather than the party bringing the action.' . . . In reaching this conclusion, we distinguish[] requests for public injunctions from other sorts of actions, such as antitrust suits, in which the public benefit is incidental to the plaintiff's award of damages; unlike private suits for damages, in a public injunction action a plaintiff acts in the purest sense as a private attorney general. . . . 'Second, the judicial forum has significant institutional advantages over arbitration in administering a public injunctive remedy, which as a consequence will likely lead to the diminution or frustration of the public benefit if the remedy is entrusted to arbitrators.' . . . [A]n arbitrator lack[s] the institutional continuity and the appropriate jurisdiction to sufficiently enforce and, if needed, modify a public injunction. . . . 'Given this inherent conflict, we will presume, absent indications to the contrary, that the Legislature did not intend that the injunctive relief claims be arbitrated.' . . . We discern[] no such legislative intent."  (*Cruz v. PacifiCare Health Systems, Inc.*, *supra*, 30 Cal.4th at pp. 312–313, citations & fn. omitted; see *id.* at pp. 315–316.)  The court also concluded that the "public injunction" exception to arbitration was not preempted by the FAA.  (See *id.* at pp. 313–315.)

The Auto Club asserts that plaintiff is not seeking, and will not seek, "public" injunctive relief but, instead, will pursue injunctive relief of benefit primarily to herself.  As noted, in *Cruz*, the Supreme Court recognized an exception to arbitration for "public"

injunctions. "Whatever the individual motive of the party requesting injunctive relief, the benefits of granting [public] injunctive relief by and large do not accrue to that party, but to the general public in danger of being victimized by the same [unlawful] practices as the plaintiff suffered." (*Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1080.) If plaintiff seeks injunctive relief other than a "public" injunction, the request must be presented to the arbitrator. (See *Kilgore v. KeyBank, Nat. Ass'n* (9th Cir., Apr. 11, 2013, Nos. 09-16703, 10-15934) ___ F.3d ___ [2013 WL 1458876, p. *5].)

Finally, the Auto Club states without elaboration that "[plaintiff's] UCL claims . . . are arbitrable," citing *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___ [131 S.Ct. 1740]. Apparently, by way of that statement, the Auto Club is asserting that *Cruz* has been overruled by *Concepcion*. If that is so, we deem the point forfeited for lack of a developed legal argument. (See *Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 865; *Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699–700.)

In sum, the trial court erred in denying the motion to compel arbitration with the exception of any request by plaintiff for public injunctive relief under the UCL.

17

## III

## DISPOSITION

The order denying defendant's motion to compel arbitration is reversed with the exception of any request by plaintiff for public injunctive relief under the California Unfair Competition Law (UCL) (Bus. & Prof. Code, §§ 17200–17210).  As to any request by plaintiff for public injunctive relief under the UCL, the order is affirmed. Defendant is entitled to costs on appeal.

NOT TO BE PUBLISHED.


                                                    MALLANO, P. J.

We concur:


CHANEY, J.


JOHNSON, J.