Opinion by Judge HURWITZ; Dissent by Judge PREGERSON.
OPINION
HURWITZ, Circuit Judge:
This appeal involves a putative class action by former students of a failed flight-training school who seek broad injunctive relief against the bank that originated their student loans and the loan servicer. The central issue is whether the district court should have compelled arbitration. We hold that this case does not fall under the narrow “public injunction” exception to the Federal Arbitration Act we recognized in Davis v. O’Melveny & Myers, 485 F.3d 1066, 1082-84 (9th Cir.2007), and remand with instructions to compel arbitration.
I.
A.
Silver State Helicopters, LLC (“SSH”) operated a flight-training school in Oakland, California. SSH referred to Key-Bank, N.A. (“KeyBank”) as a “preferred lender” in marketing materials and encouraged prospective students to borrow from KeyBank. KeyBank financed virtu *1056 ally all SSH student tuition; Great Lakes Educational Loan Services (“Great Lakes”) serviced the loans.
Every SSH student borrowing from KeyBank executed a promissory note (“Note”). The Note contained an arbitration clause, located in a section entitled “ARBITRATION,” which provided, in relevant part:
IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, NEITHER YOU NOR I WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM.... FURTHER, I WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION.... I UNDERSTAND THAT OTHER RIGHTS I WOULD HAVE IF I WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION....
There shall be no authority for any Claims to be arbitrated on a class action basis. Furthermore, an arbitration can only decide your or my Claim(s) and may not consolidate or join the claims of other persons that may have similar claims.
The Note further provided that “[t]his Arbitration Provision will apply to my Note ... unless I notify you in writing that I reject the arbitration provisions within 60 days of signing my Note.”[1]
B.
Matthew Kilgore and William Fuller (“Plaintiffs”) were SSH students, who each borrowed over $50,000 from KeyBank. The Oakland school failed before they could graduate. After the school’s demise, Plaintiffs brought this putative class action suit against KeyBank and Great Lakes (collectively, “Defendants”) in California Superior Court, seeking to enjoin Defendants from reporting loan defaults to credit agencies and from enforcing Notes against former students.[2] The gravamen of the complaint was that Defendants had violated the California Unfair Competition Law (“UCL”), Cal. Bus. & Prof.Code §§ 17200-17210, because the Note and SSH’s contracts with students failed to include language specified in the Federal Trade Commission’s “Holder Rule.”[3]
*1057 Defendants timely removed the case to the District Court for the Northern District of California,[4] and filed a motion to compel arbitration. After the district court denied the motion, Kilgore v. Keybank, Nat’l Ass’n, No. C 08-2958 TEH, 2009 WL 1975271, at *1 (N.D.Cal. July 8, 2009),[5] Defendants appealed. We have jurisdiction over Defendants’ appeal under 9 U.S.C. § 16(a)(1)(C).
After Defendants filed their notice of appeal, the district court allowed Plaintiffs to file a third amended complaint. The court then granted Defendants’ motion to dismiss for failure to state a claim upon which relief can be granted. Kilgore v. KeyBank, 712 F.Supp.2d 939, 947-58 (N.D.Cal.2010).[6] Plaintiffs appealed, and we have jurisdiction under 28 U.S.C. § 1291.[7]
II.
Plaintiffs argue that the district court erred by dismissing their third amended complaint, and Defendants argue that the district court erred by refusing to compel arbitration. Under the Federal Arbitration Act, if Defendants are correct, the district court should never have reached the merits of Plaintiffs’ claims. See 9 U.S.C. § 3 (requiring stay of civil action during arbitration). Therefore, we begin with whether the district court erred in declining to compel arbitration, a decision we review de novo. Chalk v. T-Mobile USA, Inc., 560 F.3d 1087, 1092 (9th Cir.2009).
A.
The Federal Arbitration Act (“FAA”) makes an agreement to arbitrate “valid, irrevocable, and enforceable.” 9 U.S.C. § 2. The FAA was intended to “overcome an anachronistic judicial hostility to agreements to arbitrate, which American courts had borrowed from English common law,” Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 n. 14, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), that resulted in “courts’ refusals to enforce agreements to arbitrate,” Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 270, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Recent opinions of the Supreme Court have given broad effect to arbitration agreements. See, e.g., Marmet Health Care Ctr., Inc. v. Brown, — U.S. -, 132 S.Ct. 1201, 1203-04, 182 L.Ed.2d 42 (2012) (per curiam) (upholding arbitration provision despite state law prohibiting pre-dispute agreements to arbitrate personal injury and wrongful death claims); AT&T Mobility LLC v. Concepcion, — U.S. *1058 -, 131 S.Ct. 1740, 1753, 179 L.Ed.2d 742 (2011) (holding that the FAA preempted a California rule that made class action waivers unconscionable); Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 109, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001) (confining FAA exemption for workers engaged in interstate commerce to transportation workers).
The FAA “mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.” Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). The basic role for courts under the FAA is to determine “(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.” Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir.2000).
B.
Section 2 of the FAA contains a savings clause, which provides that arbitration agreements are “enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.” 9 U.S.C. § 2. This savings clause “preserves generally applicable contract defenses.” Concepcion, 131 S.Ct. at 1748. Plaintiffs advance two theories as to why the FAA savings clause defeats the arbitration clause in the Note. We find neither availing.
1.
Under the FAA savings clause, state law that “arose to govern issues concerning the validity, revocability, and enforceability of contracts generally” remains applicable to arbitration agreements. Doctor’s Assocs., Inc. v. Casarotto, 517 U.S. 681, 685-87, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (quoting Perry v. Thomas, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)). “Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2.” Casarotto, 517 U.S. at 687, 116 S.Ct. 1652.
Under California law, a contractual provision is unenforceable if it is both procedurally and substantively unconscionable. Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669, 690 (2000). “[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.” Id.
“Substantive unconscionability focuses on the one-sidedness or overly harsh effect of the contract term or clause.” Harper v. Ultimo, 113 Cal.App.4th 1402, 7 Cal.Rptr.3d 418, 423 (2003). Plaintiffs claimed below that the Note’s ban on class arbitration is unconscionable under California law, but that argument is now expressly foreclosed by Concepcion, 131 S.Ct. at 1753.[8] Plaintiffs’ assertion that students may not be able to afford arbitration fees fares no better. See Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 90-91, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (“The ‘risk’ that [a plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement.”). And nothing else in the arbitration clause *1059 in the Note suggests substantive uncon-scionability.[9] Cf. Armendariz, 99 Cal.Rptr.2d 745, 6 P.3d at 690-94 (holding unilateral arbitration provision substantively unconscionable); Harper, 7 Cal.Rptr.3d at 423 (explaining substantive un-conscionability of arbitration damages limit).
Nor is the arbitration provision procedurally unconscionable. “Procedural unconscionability focuses on the factors of surprise and oppression.... ” Harper, 7 Cal.Rptr.3d at 422. The arbitration clause allows students to reject arbitration within sixty days of signing the Note. This provision is more forgiving than the one in Circuit City Stores, Inc. v. Ahmed, where we found thirty days a sufficient period in which to consider whether to opt out of arbitration. 283 F.3d 1198, 1199-1200 (9th Cir.2002). Nor was the arbitration clause buried in fíne print in the Note, but was instead in its own section, clearly labeled, in boldface. Cf. A & M Produce Co. v. FMC Corp., 135 Cal. App.3d 473, 186 Cal.Rptr. 114, 124-25 (1982) (finding procedural unconscionability of consequential damage provision contained in middle of last page of an agreement in inconspicuous font).
2.
a.
The UCL authorizes broad injunctive relief to protect the public from unfair business practices. Cal. Bus. & ProfiCode § 17203. The Supreme Court has suggested that claims arising from a statute whose underlying purpose creates an “inherent conflict” with the federal policy favoring arbitration may be exempt from the FAA.[10] Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Relying on Gilmer, the California Supreme Court has found an inherent conflict between the FAA policy favoring arbitration and California statutes authorizing “public” injunc-tive relief. Broughton v. Cigna Health-plans of Cal., 21 Cal.4th 1066, 90 Cal.Rptr.2d 334, 988 P.2d 67, 73, 78 (1999).
The Broughton plaintiffs “were covered by Medi-Cal, which had negotiated a contract with Cigna ... for health care coverage.” Id. at 71. They sued Cigna under California’s Consumer Legal Remedies Act (“CLRA”), Cal. Civ.Code §§ 1750-85, seeking damages for medical malpractice and injunctive relief against Cigna’s allegedly deceptive advertising. Broughton, 90 Cal.Rptr .2d 334, 988 P.2d at 71. The California Supreme Court held the damages claim subject to the arbitration clause in the Cigna policy because “[s]uch an action is primarily for the benefit of a party to the arbitration, even if the action incidentally vindicates important public interests.” Id. at 79. But the Court also found that because the plaintiffs were “functioning as a private attorney general, enjoining future deceptive practices on behalf of the general public,” id. at 76, their injunction claims were not arbitrable, id. at 75-78.
The California Supreme Court expanded upon Broughton in Cruz v. PacifiCare *1060 Health Systems, Inc., 80 Cal.4th 303, 133 Cal.Rptr.2d 58, 66 P.3d 1157 (2003). Plaintiff there alleged that PacifiCare had fraudulently induced its customers to enroll in health care programs while at the same time discouraging primary care physicians from providing services to enroll-ees. Id. at 1159. The complaint sought injunctive and monetary relief under the UCL, Cal. Bus. & Prof.Code § 17200, which prohibits unfair business practices, and under section 17500 of the same, which prohibits untrue or misleading statements designed to mislead the public. Cruz, 133 Cal.Rptr.2d 58, 66 P.3d at 1164-65. PacifiCare invoked the arbitration clause in its contract with enrollees. Id. at 1160.
As in Broughton, the California Supreme Court in Cruz held that the plaintiffs claims for monetary relief were subject to arbitration, because any public benefit from such relief would be “incidental to the private benefits obtained from those bringing the restitutionary or damages action.” Id. at 1166. Extending the reasoning of Broughton to claims brought under the UCL and Business and Professions Code, the Cruz court found “the request for injunctive relief is clearly for the benefit of health care consumers and the general public” and therefore not subject to arbitration. Id. at 1164.
We applied the Broughton-Cruz framework in Davis, 485 F.3d at 1081-84. There, an employer “adopted and distributed to its employees a new Dispute Resolution Program (DRP) that culminated in final and binding arbitration of most employment-related claims by and against its employees.” Id. at 1070. The DRP prohibited the filing of both judicial and administrative actions. Id. at 1081-82. Citing the Gilmer dictum, we noted that “employment rights under the [Fair Labor Standards Act] and California’s Labor Code” were analogous to substantive “statutory rights established for a public reason.” Id. at 1082 (internal quotations and citations omitted). Because the Davis plaintiffs sought to vindicate these statutory rights through public injunctions, we found the DRP unenforceable to the extent that it barred claims for public in-junctive relief. Id.
b.
Defendants argue that Davis was vitiated by Concepcion, and the Broughtoiv-Cruz rule no longer exempts a public injunction claim from arbitration. We need not reach that broad argument. Even assuming the continued viability of the Broughton-Cruz rule, Plaintiffs’ claims do not fall within its purview.
Public injunctive relief “is for the benefit of the general public rather than the party bringing the action.” Broughton, 90 Cal.Rptr.2d 334, 988 P.2d at 78. A claim for public injunctive relief therefore does not seek “to resolve a private dispute but to remedy a public wrong.” Id. at 76. Whatever the subjective motivation behind a party’s purported public injunction suit, the Broughton rule applies only when “the benefits of granting injunctive relief by and large do not accrue to that party, but to the general public in danger of being victimized by the same deceptive practices as the plaintiff suffered.” Id.
The claim for injunctive relief here does not fall within the “narrow exception to the rule that the FAA requires state courts to honor arbitration agreements.” Cruz, 133 Cal.Rptr.2d 58, 66 P.3d at 1162. The third amended complaint seeks an injunction prohibiting Defendants from reporting non-payment of a Note by putative class members to credit agencies, from enforcing a Note against any class member, and from disbursing the proceeds of any loans to a seller whose consumer credit contract did not include Holder Rule language. *1061 The requested prohibitions against reporting defaults on the Note and seeking enforcement of the Note plainly would benefit only the approximately 120 putative class members. The requested injunction against disbursing loans to sellers who do not include Holder Rule language in their contracts, while ostensibly implicating third parties, also falls outside the Brough-ton-Cruz rule. The third amended complaint expressly notes that KeyBank had completely withdrawn from the private school loan business and does not allege that the bank is engaging in other comparable transactions. The injunctive relief sought thus, for all practical purposes, relates only to past harms suffered by the members of the limited putative class.
The central premise of Broughton-Cruz is that “the judicial forum has significant institutional advantages over arbitration in administering a public injunctive remedy, which as a consequence will likely lead to the diminution or frustration of the public benefit if the remedy is entrusted to arbitrators.” Broughton, 90 Cal.Rptr.2d 334, 988 P.2d at 78. That concern is absent here, where Defendants’ alleged statutory violations have, by Plaintiffs’ own admission, already ceased, where the class affected by the alleged practices is small, and where class affected by the alleged practices is small, and where there is no real prospective benefit to the public at large from the relief sought.[11]
III.
For the reasons above, we VACATE the district court’s dismissal of Plaintiffs’ claims, REVERSE the denial of Defendants’ motion to compel arbitration, and REMAND with instructions to the district court to compel arbitration.

. The Note contained a choice-of-law clause providing that disputes would be governed by Ohio law and a forum-selection provision requiring disputes to be contested in Cuyahoga County, Ohio, KeyBank’s principal place of business.

. Plaintiffs amended the complaint in state court to add a third representative plaintiff, Kevin Wilhelmy, and two defendants, Student Loan Xpress and American Education Services. These parties eventually settled and are no longer involved in this litigation.

. The Federal Trade Commission promulgated the Holder Rule in 1975 in response to concerns that sellers of goods and services were increasingly separating "the consumer’s duty to pay from the seller's duty to perform” either by selling loan instruments to a third party after execution or by acting as a conduit between purchasers and third-party lenders. Promulgation of Trade Regulation Rule and Statement of Basis and Purpose, 40 Fed.Reg. 53,506, 53,507 (Nov. 18, 1975) (emphasis omitted) (codified at 16 C.F.R. pt. 433). The Rule requires consumer credit contracts to include the following language: "ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF.” 16 C.F.R. § 433.2(a).
Plaintiffs do not assert that the Holder Rule gives rise to a private cause of action, but instead seek to vindicate this right through their state law claim. See Holloway v. Bristol-Myers Corp., 485 F.2d 986, 988-89 (D.C.Cir.1973) (holding that private actions to vindicate rights asserted under the Federal *1057 Trade Commission Act may not be maintained).

. The notice of removal invoked federal jurisdiction based on a federal question, see 28 U.S.C. § 1331; complete diversity of citizenship, see 28 U.S.C. § 1332(a); and minimal diversity under the Class Action Fairness Act, see 28 U.S.C. § 1332(d)(2). After removal, Plaintiffs dropped their federal question claims.

. In denying the motion to compel arbitration, the district court applied California law, notwithstanding the Ohio choice-of-law provision in the Note. Kilgore, 2009 WL 1975271, at *5-8 (citing Hoffman v. Citibank (S.D.), N.A., 546 F.3d 1078, 1082 (9th Cir.2008) (per curiam) (applying California conflict-of-law analysis to choice-of-law provision in credit card contract)). We need not consider which law is applicable as the result would be the same in light of our decision that the district court should have compelled arbitration. See note 11, infra.

. The district court held that the various counts in the third amended complaint either failed to state a claim upon which relief could be granted, Kilgore, 712 F.Supp.2d at 947-53, or were preempted by federal law, id. at 953-58.

. We consolidated the two appeals. Order, Kilgore v. KeyBank, Nat’l Ass’n, 673 F.3d 947 (9th Cir.2010).

. In holding that California law rendered the class arbitration waiver unconscionable, the district court relied on Discover Bank v. Superior Court, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (2005), abrogated by Concepcion, 131 S.Ct. at 1753. In addressing the issue, the district court did not have the benefit of the Supreme Court's later Concepcion opinion.

. The Note also includes a clause preventing disclosure of any arbitration award. Although we have found confidentiality provisions to be substantively unconscionable when applied to a large class of customers, Ting v. AT&T, 319 F.3d 1126, 1151-52 (9th Cir.2003), the small number of putative class members in this case (approximately 120) mitigates such concerns. In any event, the enforceability of the confidentiality clause is a matter distinct from the enforceability of the arbitration clause in general. Plaintiffs are free to argue during arbitration that the confidentiality clause is not enforceable.

. The parties dispute whether the "inherent conflict” exemption is limited to federal statutes or applies to both federal and state statutes. For the reasons discussed below, we need not resolve this issue.

. Because we hold that arbitration is required under California law, we need not address Defendants' contention that Ohio law (which apparently has no Broughton-Cruz rule, see Eagle v. Fred Martin Motor Co., 157 Ohio App.3d 150, 809 N.E.2d 1161, 1170 (2004)) should apply.