Filed 10/31/13  Goss v. Ross Stores CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| RACHEL GOSS,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ROSS STORES, INC.,<br><br>        Defendant and Appellant. | A133895<br><br>(Alameda County<br>Super. Ct. No. RG11577328) |

**INTRODUCTION**

Plaintiff and respondent Rachel Goss has sued her employer, defendant and appellant Ross Stores, Inc. (Ross), for alleged Labor Code and wage order violations for failing to provide "suitable seats" for cashiers.  Goss asserts claims on her own behalf, including for injunctive relief under the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) (UCL), and class claims a "representational" claim under the Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.) (PAGA).  Ross moved to compel arbitration of Goss's individual claims, claiming she waived any right to pursue class and in a representational claims.  While the trial court concluded Goss entered into a binding arbitration agreement, it also concluded her waiver of representational claims was unenforceable and she could not be compelled to arbitrate her claim for injunctive relief.  The court therefore denied Ross' motion.  We conclude *AT&T Mobility LLC v.*

1

*Concepcion* (2011) 563 U.S. ___ [131 S.Ct. 1740, 179 L.Ed.2d 742] (*Concepcion* ) is controlling and requires reversal.[1]

### FACTUAL AND PROCEDURAL BACKGROUND

Ross operates *Ross Dress for Less* stores nationwide and hired Goss as a cashier in 2010. Upon hiring, Ross provided Goss, as it does all new employees, a lengthy handbook entitled "Store Associate Handbook." The handbook sets forth, in detail, company policies and procedures concerning matters such as attendance, work scheduling, and employee conduct. Page 47 of the handbook is entitled "Arbitration Policy" and provides in pertinent part:

> "This Arbitration Policy ('Policy') applies to any disputes, arising out of or relating to the employment relationship, between an associate and Ross. **This Policy requires all such disputes to be resolved only by an Arbitrator through final and binding arbitration.** Such disputes include without limitation disputes about unfair competition, use of trade secrets, compensation, termination, or harassment and claims arising under the Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act, and state statutes, if any, addressing the same subject matters, and all other state statutory and common law (excluding workers' compensation claims). . . .
>
> "This Policy is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. Notwithstanding any other provision of the Policy, an associate retains the right under the National Labor Relations Act to file charges with the National Labor Relations Board . . . .
>
> "The parties will have the right to conduct civil discovery and bring motions, as provided by the Federal Rules of Civil Procedure and enforced by the Arbitrator. However, there will be no right or authority for any

---

[1] The California Supreme Court has granted review on issues identical or similar to those raised in the instant appeal. (See, e.g., *Iskanian v. CLS Transportation Los Angeles, LLC* (2012) 142 Cal.Rptr.3d 372, rev. granted Sept. 19, 2012 (S204032) [impact of *Concepcion* on *Gentry v. Superior Court* (2007) 42 Cal.4th 443 (*Gentry*) and on PAGA claims].) In addition to granting review, the court has issued "grants and holds" in many other arbitration cases. Accordingly, the issues before us have been explicated at length and there is no need to retread that extensive ground here.

2

dispute to be brought, heard or arbitrated as a class action, private attorney general or in a representative capacity on behalf of any person."

A subsequent page of the handbook is entitled "Store Associates Handbook Acknowledgement And Agreement." This page is an unnumbered, tear-off appendix, which, on execution by the employee, is removed from the handbook and filed in the employee's personnel file.

The Acknowledgement and Agreement has several parts. The first part (which takes up the top half of the page) begins with the line: "I acknowledge that I have received the following policies. I have read, understand and agree to comply with the following policies . . . ." It then lists, as separate line items, seven of the policies explained in detail in the handbook, such as the "Ross Non-Harassment Policy" and "Ross Workplace Anti-Violence Policy." Each listed policy is immediately followed by a parenthetical, the language of which varies. The parenthetical for three of the policies states: "(I have read and agree to comply with this policy)." The parenthetical following two other policies ("Customer Service" and "Protection Ross' Assets—Loss Prevention") states: "(I have read and understand this portion of the handbook)." The parenthetical following the policy identified as the "Ross Associate Problem Resolution Program" states: "(I have read and agree to utilize and comply with, and be bound to, this program)." The parenthetical following the policy identified in bold as the "**ROSS ARBITRATION POLICY"** states in bold: "(**I have read and agree to utilize, comply with and be bound to, this policy**)." To the right of each of these seven listed policies and parentheticals is a box, with instructions to "[i]nitial here." Goss initialed all seven boxes, including the box to the right of the referenced arbitration policy.

The second part of the Acknowledgement and Agreement (which takes up the lower half of the page) contains a signature blocks prefaced by two separate paragraphs. The first paragraph states: "This is to acknowledge that I have received a copy of the Ross Store Associate Handbook. I understand and agree that it is my responsibility to read the Store Associate Handbook and abide by the rules, policies and standards as they pertain to my employment."

3

The second paragraph states: "I also acknowledge and agree that my employment with Ross is not for a specific period of time and can be terminated at any time for any reason, with or without cause or with or without notice, by Ross or myself. I understand and agree that nothing in the Store Associate Handbook or Ross's discretionary use of corrective or progressive discipline creates any express or implied contract, including any contract contrary to at-will employment. I understand that any rules, policies, or benefits described in the Store Associate Handbook may be changed, modified, or varied from by Ross at any time, except for the right of the parties to terminate employment at-will, which may only be modified by an express written agreement signed by the CEO of the Company and approved by the Board of Directors. Accordingly, I understand and acknowledge that no manager, supervisor, or other associate has any authority to make any verbal or written statements, representations or agreements, expressed or implied, contrary to at-will employment and I agree not to rely upon any verbal or written statements, representations or agreements, expressed or implied, contrary to at-will employment."

About a year after she was hired, in May 2011, Goss filed suit against Ross for allegedly failing to provide suitable seats for her and other similarly situated employees in violation of Industrial Welfare Commission Wage Order 7-2001, section 14, and Labor Code section 1198. She asserts claims on her own behalf, class claims under Code of Civil Procedure section 382, and a representational claim under the PAGA. She also sought, inter alia, penalties under the PAGA and injunctive relief under the UCL.

Ross filed a motion to compel arbitration, seeking to arbitrate Goss's individual claims. Goss maintained there was no valid contract to arbitrate, and even if there was, she could not be compelled to arbitrate only her individual claims because the class action and representational waiver in the arbitration agreement was unenforceable under *Brown v. Ralphs Grocery Co.* (2011) 197 Cal.App.4th 489 (*Brown*).

The trial court rejected Goss's claim there was no valid contract to arbitrate. However, as to the PAGA claim, the court held the class action and representational waiver was invalid under the " 'state enforcement' rationale" of *Franco v. Athens*

4

*Disposal Co., Inc.* (2009) 171 Cal.App.4th 1277 (*Franco*) and *Brown, supra,* 197 Cal.App.4th 489. As to the UCL claim for injunctive relief (which Goss had not separately addressed), the court concluded "[c]laims for injunctive relief under the UCL are not arbitrable if they are 'designed to prevent further harm to the public rather than to redress or prevent injury to a plaintiff,' " citing *Cruz v. PacificCare Health Systems, Inc.* (2003) 30 Cal.4th 303 (*Cruz*).

**DISCUSSION**

### A.     *Agreement to Arbitrate*

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." (*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth* (1985) 473 U.S. 614, 626.) Thus, while we ordinarily would not begin our discussion by addressing an argument raised by the respondent as an alternative basis on which to affirm, we do so here, because Goss contends there is no contract to arbitrate. As mentioned above, she made this assertion, unsuccessfully, in the trial court. On this issue, we agree with the trial court.

Goss first asserts the Acknowledgement and Agreement form was too vague to constitute an agreement to arbitrate. She points to phrases in the form like the following: "I acknowledge that I have received the following policies" and "[t]his is to acknowledge that I have received a copy of the Ross Store Associate Handbook." She maintains merely acknowledging receipt of an employment policy does not create a binding contract, citing *Sparks v. Vista Del Mar Child and Family Services* (2012) 207 Cal.App.4th 1511 (*Sparks*). In *Sparks*, the Court of Appeal concluded an employee-signed "Acknowledgement" form did not create an agreement to arbitrate because "the acknowledgment form did not reference the arbitration clause, much less advise plaintiff that he would be bound by it." (*Id.* at p. 1522.)

Here, in contrast, the Acknowledgement and Agreement form explicitly references the arbitration policy in bold, capitalized lettering and unequivocally states the employee agrees to "be bound" by it: "**ROSS ARBITRATION POLICY (I have read and agree to utilize, comply and be bound to, this policy**)." This is the only referenced policy

5

that is set forth in bold, capitalized lettering, and it is followed by a parenthetical expressly stating the employee agrees to "be bound" by its terms.  In addition, Goss initialed the box next to this statement, indicating she understood and agreed to its language.

Goss also points to the language in the Acknowledgment and Agreement form stating, "nothing in the Store Associate Handbook . . . creates any express or implied contract."  Read in context, however, it is clear this phrase, taken from the paragraph preceding the second signature block, pertains to the issue of "at-will" employment, and is an affirmation that nothing in the handbook or policies set forth therein gives rise to an employment relationship requiring cause for termination.  The provisions confirming "at-will" employment status do not detract from, or render ambiguous, the explicit language pertaining to the arbitration provision.  Indeed, as the trial court noted, Goss "failed to provide a declaration or other evidence to show that she reasonably did not understand that she was agreeing to arbitrate all employment claims against defendant."

Goss next contends any agreement to arbitrate is illusory and unenforceable because the Acknowledgement and Agreement form provides, "any rules, policies, or benefits described in the Store Associate Handbook may be changed, modified, or varied from by Ross at any time."  It is well established, however, that "where the contract specifies performance the fact that one party reserves the power to vary it is not fatal if the exercise of the power is subject to prescribed or implied limitations such as the duty to exercise it in good faith and in accordance with fair dealings."  (*James G. Freeman & Associates, Inc. v. Tanner* (1976) 56 Cal.App.3d 1, 10; accord, *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1214 (*24 Hour Fitness*); *Powell v. Central Cal. Fed. Sav. & Loan Assn.* (1976) 59 Cal.App.3d 540, 549; *Automatic Vending Co. v. Wisdom* (1960) 182 Cal.App.2d 354, 357–358 (*Automatic Vending*).  In California, " '[where] a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing.  [Citations.]" (*Automatic Vending*, *supra*, 182 Cal.App.2d, at p. 358.) Accordingly, in *24 Hour Fitness,* Division Three of this court rejected the same argument

6

Goss makes here and held the fact the employer reserved the right to modify the employee handbook did not render the arbitration provision therein illusory and unenforceable. (*24 Hour Fitness*, at pp. 1213–1214.)

In sum, as did the trial court, we conclude that pursuant to the "Arbitration Policy" set forth in the handbook and "Acknowledgement and Agreement" form expressly referencing that policy, the parties entered into a valid arbitration agreement.

**B.** *Enforceability of Agreement to Arbitrate*

*1. Representational Claim Under the PAGA*

The arbitration policy provides: "[T]here will be no right or authority for any dispute to be brought, heard, or arbitrated as a class action, private attorney general, or in a representative capacity on behalf of any person." Relying on *Franco, supra,* 171 Cal.App.4th 1277, and *Brown*, *supra*, 197 Cal.App.4th 489, the trial court concluded *Concepcion* is not controlling and the preclusion of representational claims under the PAGA is unenforceable.

In *Franco,* the Court of Appeal addressed two issues, whether a class action waiver was unconscionable and unenforceable under our Supreme Court's decision in *Gentry, supra,* 42 Cal.4th 443, and whether a bar to proceeding with a representational claim under the PAGA was also unenforceable under the reasoning of *Gentry.* In *Gentry*, the Supreme Court set forth a multi-part standard by which to determine whether a class action waiver is unconscionable and, thus, unenforceable. (*Gentry*, at pp. 457–464) If found to be unconscionable, *Gentry* further held the trial court could require class arbitration. (*Id.* at p. 466.) In *Franco*, the Court of Appeal first concluded *Gentry*, which had involved overtime claims, applied equally to meal and rest period claims. It next concluded the plaintiff had made an adequate showing as to the *Gentry* factors and therefore the class action waiver was unconscionable and unenforceable. (*Franco*, *supra*, 171 Cal.App.4th at pp. 1295–1299.) It then concluded *Gentry's* rationale—that a class action waiver that impedes comprehensive enforcement of "nonwaivable" statutory rights is unconscionable—also applies to a prohibition against pursuing representational claims under the PAGA. (*Franco*, at pp. 1299–1303.) Finding both the class action waiver and

7

preclusion of representational claims unenforceable, the court concluded the arbitration agreement "as a whole" was "tainted with illegality" and therefore enforceable. (*Id.* at p. 1303.) *Franco* was decided before *Concepcion*, and thus did not discuss preemption under the Federal Arbitration Act.

In *Brown*, the Court of Appeal once again considered the enforceability of a class action waiver and preclusion of representational claims under the PAGA, this time post-*Concepcion*. (*Brown, supra,* 197 Cal.App.4th at p. 494.) The panel majority first concluded it did not need to reach the question of *Concepcion's* impact on *Gentry's* unconscionability analysis since the plaintiff had not carried her burden under *Gentry*, in any event, to establish unconscionability. (*Brown,* at pp. 496–498.) It next concluded *Concepcion*, which involved a consumer contract, did not apply to a claim under the PAGA to enforce labor laws. (*Brown,* at pp. 498–503.) "The United States Supreme Court . . . did not specifically address whether California state law applicable to waiver of statutory representative actions—which actions are a means to enforce state labor laws for the benefit of the public—was preempted by the FAA." (*Id.* at p. 502.) "Supreme Court authority does not address a statute such as the PAGA, which is a mechanism by which the state itself can enforce state labor laws," and until it does so, the court concluded the public enforcement attribute of the PAGA precluded waiver of the right to proceed with representational claims there under. (*Id.* at pp. 500–503.) "In short, representative actions under the PAGA do not conflict with the purposes of the FAA. If the FAA preempted state law as to the unenforceability of the PAGA representative action waivers, the benefits of private attorneys general actions to enforce state labor laws would, in large part, be nullified." (*Id.* at p. 502.)

In short, the *Brown* majority concluded *Concepcion* was distinguishable because it involved a consumer contract, and the important public policies vindicated by the PAGA precluded the waiver of representational claims.

The *Brown* dissent concluded otherwise: "The preemptive effect of the Federal Arbitration Act (FAA) requires enforcement of the PAGA waiver in the employment arbitration agreement in this case under the holding of" *Concepcion*. (*Brown, supra*,

197 Cal.App.4th at p. 505 (con. & dis. opn. of Kriegler, J.).) The dissent considered the rationale of *Concepcion* controlling and concluded it undercut *Gentry* and made clear the FAA *preempts* any state law that purports to preclude arbitration, regardless of the state public policy reasons undergirding that law. (*Id.* at pp. 505–509.) "Application of *Franco* in this case means the agreement to arbitrate will not be enforced due to state law, which is inconsistent with . . . Supreme Court authority." (*Id.* at p. 508.) The dissent observed the federal district court in *Quevedo v. Macy's, Inc.* (C.D.Ca. June 16, 2011) No. CV 09-1522 GAF (MANx) Civ. Minutes at p. 20, had come to the same conclusion. (*Brown,* at p. 508.)

We agree with the dissent in *Brown* that the United States Supreme Court has spoken on the issue of state law implementing state public policy taking precedence over the FAA, that the high Court has rejected that result, and that we are required to follow its binding authority. Under the rationale of *Concepcion*, the public policy reasons underpinning the PAGA do not allow a court to disregard a binding arbitration agreement. The FAA preempts any attempt by a court or state legislature to insulate a particular type of claim from arbitration. (See also *Marmet Health Care Center, Inc. v. Brown* (2012) ___ U.S. ___, 132 S.Ct. 1201 [holding state law prohibiting arbitration of any personal injury or wrongful death claim against nursing homes on "public policy" grounds preempted by FAA]; cf. *American Express co. v. Italian Colors Restaurant* (2013) ___ U.S. ___ [133 S.Ct. 2304, 2309–2311] [reiterating courts must "rigorously enforce" arbitration agreements according to their terms, even for claims alleging violation of a federal statutory right and rejecting "effective vindication" as theory to invalidate the arbitration agreement].)

Goss contends the National Labor Relations Board's holding in *D.R. Horton* (Jan. 3, 2012) 357 NLRB No. 184 (*Horton* ) supports the proposition that "unwaiveable" statutory rights can be immunized from arbitration. We explored the effect of *Horton* on FAA preemption in *Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115 (*Nelson*), and there declined to follow the case. (*Id.* at p. 1132–1133.) We similarly decline to follow the NLRB's decision here.

Goss also cites *EEOC v. Waffle House, Inc.* (2002) 534 U.S. 279 (*Waffle House*) as support for the proposition the representational waiver is unenforceable because it purportedly binds the State of California. In *Waffle House*, the United States Supreme Court held "the proarbitration policy goals of the FAA do not require the agency to relinquish its statutory authority if it has not agreed to do so." (*Id.* at pp. 293–294.) Goss asserts that because her PAGA claim *substitutes* for action brought by California labor enforcement agencies, she cannot be compelled to arbitrate, since California is a nonparty to the Arbitration Agreement and thus cannot be bound by its terms under the FAA. In *Waffle House*, the Equal Employment Opportunity Commission (EEOC) brought a claim *on behalf* of an employee who had signed an arbitration agreement, and the court held the EEOC was not bound by the employee's agreement. (*Id.* at pp. 282–283, 295–296.) In the instant case, the situation of the parties is the opposite. Here, the litigating party, herself, signed the arbitration agreement and brings the claim.

In sum, we agree with the view that *Concepcion*'s rationale applies to waivers of representation claims under the PAGA, and that under *Concepcion* such waivers cannot be ruled unenforceable on the ground the PAGA vindicates state law public policies.[2]

### 2. Injunctive Relief Under the UCL

Goss makes no attempt on appeal to defend the trial court's determination that her UCL claim for injunctive relief is not subject to arbitration. The trial court relied on *Cruz*, *supra*, 30 Cal.4th 303, to conclude her UCL claim was not arbitrable because such claims are "designed to prevent further harm to the public at large rather than to redress or prevent injury to a plaintiff." (*Cruz*, at pp. 315–316.) (AA 278.) We discussed *Cruz* in *Nelson*, *supra*, 207 Cal.App.4th 1115, and concluded the case had been "abrogated in the wake of *Concepcion*."[3] (*Nelson*, at p. 1135.) Specifically, in *Nelson*, this court agreed

---

[2] We appreciate that the trial court was bound by the majority decision in *Brown.* (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455–456.)

[3] In *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, the Supreme Court held claims for injunctive relief under the Consumers Legal Remedies Act (CLRA) designed to protect the public from deceptive business practices were not subject to arbitration. In *Cruz, supra,* 30 Cal.4th 303, the court extended *Broughton* to include

with the Ninth Circuit's decision in *Kilgore v. KeyBank, N.A.* (9th Cir. 2012) 673 F.3d 947 (*Kilgore*),[4] that "*Concepcion* adopts a sweeping rule of FAA preemption. Under *Concepcion*, the FAA preempts any rule or policy rooted in state law that subjects agreements to arbitrate particular kinds of claims to more stringent standards of enforceability than contracts generally. . . . '[W]e hold that "the analysis is simple: The conflicting [*Broughton-Cruz*] rule is displaced by the FAA." [Citation.] *Conception* allows for no other conclusion' [Citation.] Since *Broughton-Cruz* prohibits outright the arbitration of claims for public injunctive relief, it is in conflict with the FAA." (*Nelson*, at p. 1136, citing *Kilgore*, at p. 963.)

**DISPOSITION**

The order denying Ross's motion to compel individual arbitration is reversed. Respondent to recover costs on appeal.

_____

Banke, J.

We concur:

_____

Margulies, Acting P. J.

_____

Dondero, J.

---

claims to enjoin unfair competition under the UCL if relief is sought to prevent further harm to the public at large rather than merely to redress or prevent injury to a plaintiff. (*Cruz,* at pp. 315–316.)

[4] Rehearing en banc was granted in *Kilgore*, and on rehearing the Ninth Circuit again reversed the denial of defendant's motion to compel arbitration. (*Kilgore v. KeyBank, N.A.* (9th Cir. 2013) 718 F.3d 1052, 1061.)

11