Takeshia MCLAURIN Plaintiff,

v.

**RUSSELL SIGLER, INC., Defendant.**

**CASE NO. SACV 15-1678 AG (JCGx)**

United States District Court,
C.D. California.

Signed 01/08/2016

Allyson K. Thompson, Kring and Chung LLP, Irvine, CA, for Plaintiff.

J. David Bournazian, Wendy A. Sugg, Troutman Sanders LLP, Irvine, CA, for Defendant.

## ORDER GRANTING MOTION TO COMPEL ARBITRATION

Andrew J. Guilford, United States District Judge

Plaintiff Takeshita McLaurin sued Defendant Russell Sigler, Inc. in state court and Defendant timely removed the case to this Court. Now pending is Defendant's Motion to Compel Arbitration of Plaintiff's claims.

The Court GRANTS the Motion to Compel Arbitration and DISMISSES the action.

### 1. BACKGROUND

Defendant is a business that sells heating, ventilating, and air conditioning equipment. Plaintiff initially worked for Defendant as a temporary employee, but became a full-time employee in January 2011. In March 2013, after two years of working for Defendant, Plaintiff suffered a stroke, and took a medical leave of absence that Defendant allegedly approved to last until March 2014. During Plaintiff's leave of absence, Defendant allegedly harassed her and threatened to fire her if she did not return to work by September 27, 2013. On September 30, 2013, Defendant fired Plaintiff for not returning to work. Based on those allegations, Plaintiff asserts eight claims in her Complaint, including claims for disability discrimination, hostile work environment, retaliation, and wrongful termination.

Defendant contends that Plaintiff signed a valid arbitration agreement that requires those claims to be resolved through arbitration. Specifically, Defendant's counsel declares that on January 19, 2011, Defendant provided Plaintiff with a copy of the "Arbitration and Dispute Resolution Policy" ("the Arbitration Policy") and an Employee Handbook. The Policy remained in effect without changes during Plaintiff's employment. The Arbitration Policy covered "claims and disputes arising out of alleged unlawful employment discrimination, termination by breach of alleged contract or policy, violations of federal or state discrimination statutes, governmental law, regulation, ordinance, or public policy, or employment tort, not covered by worker's compensation." The Arbitration Policy also discussed the arbitration procedure, including how the parties will select a neutral arbitrator, the choice of law, discovery procedures, and the burden of proof.

On the same day Plaintiff received the Arbitration Policy, she signed an "Acknowledgment of Receipt of Employee Handbook." The Acknowledgment provides in relevant part:

> I further understand that Russell Sigler, Inc. provides a Dispute Resolution Policy for prompt responses to complaints or concerns. I have received a copy of the Dispute Resolution Policy and understand that arbitration is the sole and exclusive method to resolve all disputes. These disputes include alleged unlawful employment discrimination, termination by breach of contract or otherwise, or employment tort, including claims of violations of federal or state discrimination statutes or public policy. This procedure is in lieu of lawsuits in court with or without a trial by jury.

### 2. LEGAL STANDARD

■ "Section 2 of the Federal Arbitration Act (FAA) makes agreements to arbitrate 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *AT & T Mobility LLC v. Concepcion,* 563 U.S. 333, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) (quoting 9 U.S.C. § 2). The FAA "mandates that district courts shall direct parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Kilgore v. KeyBank, Nat. Ass'n,* 718 F.3d 1052, 1058 (9th Cir.2013) (en banc) (quoting *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)). This mandate limits courts' involvement to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore,* 718 F.3d at 1058 (quotation marks omitted). While the FAA preempts any particular state law that may impede the FAA's objectives, state law still generally governs

whether the parties agreed to arbitrate and whether any defenses invalidate an agreement. *Concepcion,* 563 U.S. at 339, 131 S.Ct. 1740; *see also First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

## 3. ANALYSIS

Defendant argues that as a company headquartered in Arizona with facilities nationwide, the FAA applies to Defendant's Arbitration Policy. The Arbitration Policy itself also states that the FAA applies. Plaintiff does not appear to contest that the Arbitration Policy is governed by the FAA or that the Arbitration Policy covers Plaintiff's claims. Instead, Plaintiff argues that the Agreement is unenforceable because it is unconscionable.

### 3.1 Unconscionability

■ In California, an agreement must be both procedurally and substantively unconscionable to be unenforceable. *See Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal.4th 83, 114, 99 Cal. Rptr.2d 745, 6 P.3d 669 (2000), *abrogated in part on other grounds in AT & T Mobility LLC v. Concepcion,* 563 U.S. 333, 131 S.Ct. 1740 (2011). Plaintiff raises multiple, often over-lapping arguments, that can be lumped into those two categories. On procedural unconscionability, Plaintiff argues that (1) the Arbitration Policy is an improper "contract of adhesion" that didn't give Plaintiff an opportunity to negotiate its terms, (2) Plaintiff did not sign the Arbitration Policy, (3) Defendant failed to provide the rules governing the arbitration or inform Plaintiff that she would be giving up her right to a jury, and (4) Plaintiff did not have a choice to reject the Policy because economic pressures to accept the job made her vulnerable. On substantive unconscionability, Plaintiff argues that the Arbitration Policy is invalid because it (1)

lacks mutuality, (2) doesn't provide for adequate discovery, (3) contains a "sanctions clause" that could result in Plaintiff paying Defendant's attorney fees, and (4) risks that Plaintiff may bear the costs of the arbitration.

Out of those scatter-shot arguments, only the final argument—the risk that Plaintiff may bear the costs of the arbitration—passes muster. (More on that later.) The other arguments fail.

To start, some of the arguments are internally contradictory. For instance, Plaintiff argues that Plaintiff "did not even sign the Agreement" and was not "even provided with the rules of arbitration" while at the same time arguing that she "did not have a choice in signing the Acknowledgment of Receipt of Employee Handbook, which required her to acknowledge that Russell Sigler had a dispute resolution policy." Which is it? Did Plaintiff sign or not sign the Agreement? Did Plaintiff receive the Arbitration Policy, as she acknowledged in the Acknowledgment, or didn't she?

■■ At other points, Plaintiff's arguments run directly contrary to the plain language of the Arbitration Policy. For example, at one point Plaintiff argues that the Arbitration Policy lacks mutuality because it doesn't require Defendant to submit its claims against Plaintiff to arbitration. But the Arbitration Policy clearly provides otherwise, stating that "[Defendant] Russell Sigler, Inc., its representative, and the employee (collectively, the 'Parties') shall submit to arbitration.... [T]he Parties waive all rights to a trial, with or without a jury...." It also states that "[a]ll Russell Sigler, Inc. claims against that employee of which Russell Sigler, Inc., is or should have been aware prior to submission to arbitration must also be submitted to arbitration." At another point, Plaintiff argues that the Ac-

knowledgment "did not inform Plaintiff that she would be giving up her fundamental right to a jury." Again, the plain language of the Arbitration Policy and Authorization form contradicts that argument. The Policy states that its dispute resolution policy "is in lieu of lawsuits in court with or without a trial by jury." It also provides that "[a]ll disputes ... shall be resolved pursuant to this policy and there shall be no recourse to court, with or without a jury trial." At still another point, Plaintiff argues that the limits on discovery are "one-sided." But, again, the plain language of the Arbitration Policy says otherwise, providing for "one (1) deposition each."

 Sometimes, Plaintiff's arguments run directly contrary to case law. For instance, Plaintiff argues that she did not agree to the Arbitration Policy because she "did not even sign" the Arbitration Policy. But Plaintiff signed an "Acknowledgment of Receipt of Employee Handbook," providing that Plaintiff understood Defendant's Arbitration Policy and that she received a copy of the Policy. The Ninth Circuit and California courts confirm that Plaintiff's signature on the Acknowledgment is sufficient to show Plaintiff's agreement to arbitrate. *See Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1439 (9th Cir.1994) ("While the FAA requires a writing, it does not require the writing be signed by the parties." (citations and internal quotation marks omitted)); *Avery v. Integrated Healthcare Holdings, Inc.*, 218 Cal.App.4th 50, 66, 159 Cal.Rptr.3d 444 (2013) ("It is, of course, the law that the parties may incorporate by reference into their contract the terms of some other document." (citations omitted)); *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal. App.4th 1199, 1215, 78 Cal.Rptr.2d 533 (1998) (finding that signing an acknowledgment of receiving an employment hand-

book was sufficient to show a plaintiff's agreement to the arbitration policy).

 At other times Plaintiff's arguments lack sufficient support in reason or fact. For instance, Plaintiff argues that the Arbitration Policy was an "adhesive contract" that Defendant presented on a "take-it-or-leave-it" basis without an opportunity to negotiate. But the facts belie Plaintiff's contention, as Plaintiff had well over 10 days between receiving the Arbitration Policy and beginning her employment to think about negotiating the terms of the Policy. Beyond Plaintiff's bombastic, conclusory language, Plaintiff provides inadequate support in law or reason for the argument that presenting a contract that selects a particular forum to adjudicate disputes somehow constitutes "highly oppressive behavior" to invalidate the contract. Lack of negotiating experience or willpower to negotiate contractual terms isn't enough to conclude that a party to a contract was prevented from negotiating its terms. Perhaps instead Plaintiff cared more about other terms of her employment—like her salary, benefits, and vacation days—and Defendant cared more about different terms—like what would happen if a lawsuit resulted. *See PMC Tech. Sales, Inc. v. Cinch Connectors, Inc.*, SACV 15–1107 AG (DFMx), Dkt. No. 29 (C.D.Cal. Nov. 17, 2015) (rejecting an argument that Plaintiff entered into a "take-it-or-leave-it" contract with a forum selection clause and noting that "[i]t may also be significant that the forum selection clause that was important to Defendant at the inception of the contract was not important to Plaintiff at that time."). This largely reflects the nature of contract. *See* Milton & Rose Friedman, Free to Choose 13 (1980) ("[I]f an exchange between two parties is voluntary, it will not take place unless both believe they will benefit from it. Most economic fallacies

derive from the neglect of this simple insight, from the tendency to assume that there is a fixed pie, that one party can gain only at the expense of another.").

Thus, Plaintiff's scatter-shot arguments to invalidate the agreement fail to persuade the Court.

### 3.2 Cost–Sharing Provision

■ Plaintiff's arguments regarding the costs of arbitration merit review. Plaintiff argues that the cost-sharing provision of the Arbitration Policy is unconscionable. The Arbitration Policy provides that:

> Expenses of the arbitrator shall be borne by Russell Sigler, Inc., and the employee as the arbitrator may determine. In the absence of a different determination by the arbitrator, the employee shall pay the lesser of one-half (1/2) of these costs or two (2) days gross pay, unless the arbitrator assess all or part of the expenses against the other specified party.

The California Supreme Court has held that "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." *Armendariz,* 24 Cal.4th at 110–11, 99 Cal.Rptr.2d 745, 6 P.3d 669. For instance, it is unconscionable to require a plaintiff bringing a statutory claim under FEHA to risk bearing the costs of bringing that claim in arbitration. *Id.*

Plaintiff here brings statutory claims, including one under FEHA. If Plaintiff brought her claims in court, she would not have to pay to access the court's forum beyond basic filing fees. Thus, under California law, the cost-sharing provision of the Arbitration Policy, which risks that Plaintiff will pay half of the costs of arbi-

tration, is unconscionable. Just because the Arbitration Policy risks, but does not guarantee, that Plaintiff could pay to access the arbitration forum does not save the clause. *See Armendariz,* 24 Cal.4th at 110, 99 Cal.Rptr.2d 745, 6 P.3d 669 ("[I]f it is possible that the employee will be charged substantial forum costs, it is an insufficient judicial response to hold that he or she *may* be able to cancel these costs at the end of the process through judicial review.").

■ But by the same logic, the Policy's provisions requiring Plaintiff to pay a $100 filing fee and imposing attorney fees as sanctions for discovery abuses aren't unconscionable, as Plaintiff could bear those costs in a judicial forum as well.

■ The Arbitration Policy's unconscionable cost-splitting provision doesn't make the entire agreement unenforceable. Rather, if a clause is unconscionable "the court, in its discretion, may refuse to enforce the contract as a whole if it is permeated by the unconscionability, or it may strike any single clause or group of clauses which are so tainted or which are contrary to the essential purpose of the agreement, or it may simply limit unconscionable clauses so as to avoid unconscionable results." *Armendariz,* 24 Cal.4th at 122, 99 Cal.Rptr.2d 745, 6 P.3d 669 (citing Legislative Committee comments to Cal. Civ.Code § 1670.5). "[T]he strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement...." *Roman v. Superior Court,* 172 Cal.App.4th 1462, 1477, 92 Cal. Rptr.3d 153 (2009). As other California courts have held, the cost-sharing provision here is "plainly collateral to the main purpose of the contract" and therefore may be severed. *Id.* (finding that an unconscionable cost-sharing provision did not invalidate the entire agreement). This is

also consistent with the Arbitration Policy itself, which includes a severance clause.

After the cost-sharing provision is severed from the Arbitration Policy, the agreement is valid and must be enforced.

### 3.3 Conclusion

Arguments like Plaintiff's have become routine by plaintiffs trying to avoid arbitration agreements. And plaintiffs persist in raising these arguments despite the growing weight of authority that is pro-arbitration, including recent decisions by the United States Supreme Court and the Ninth Circuit. *See, e.g., Am. Exp. Co. v. Italian Colors Rest.*, — U.S. ——, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013); *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011); *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151 (9th Cir.2013); *see also Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1057 (9th Cir.2013) ("Recent opinions of the Supreme Court have given broad effect to arbitration agreements."). Perhaps the reluctance to embrace arbitration persists because the use of arbitration in certain contexts raises legitimate policy concerns. For example, this Court continues to have reservations about whether it is desirable for courts to be required to enforce injunctions crafted by arbitrators.

But the continuing weight of authority in favor of arbitration is undeniable. Indeed, the Court has repeatedly found, in nearly identical situations, that the arguments raised by Plaintiff are inadequate to avoid arbitration. Plaintiff has not shown that the facts of this case warrant a different outcome. Under the current weight of authority, the Court finds that the agreement to arbitrate is valid, enforceable, and encompasses this dispute.

### 4. DISPOSITION

The Court GRANTS the Motion to Compel Arbitration. The Court DISMISSES the case.

IT IS SO ORDERED.