**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOHN MOMOT,

        *Plaintiff-Appellee,*

v.

DENNIS MASTRO; MICHAEL MASTRO;
JEFF MASTRO,

        *Defendants-Appellants.*

No. 10-15276

D.C. No.
2:09-cv-00975-RLH

OPINION

Appeal from the United States District Court
for the District of Nevada
Roger L. Hunt, Chief District Judge, Presiding

Argued and Submitted
March 15, 2011—Davis, California

Filed June 22, 2011

Before: William A. Fletcher and Milan D. Smith, Jr.,
Circuit Judges, and George H. Wu, District Judge.*

Opinion by Judge Milan D. Smith, Jr.

*The Honorable George H. Wu, United States District Judge for the
Central District of California, sitting by designation.

## COUNSEL

Jerry C. Bonnett, Bonnett, Fairbourn, Friedman & Balint, PC, Phoenix, Arizona, for the defendant-appellants.

Marc P. Cook, Bailus Cook & Kelesis, Ltd., Las Vegas, Nevada, for the plaintiff-appellee.

## OPINION

M. SMITH, Circuit Judge:

Defendants-Appellants Dennis, Jeff, and Michael Mastro (collectively, the Mastros) appeal from the district court's order enjoining arbitration and denying their motion to stay judicial proceedings under section 3 of the Federal Arbitration Act (FAA), 9 U.S.C. § 3.

In connection with an asset purchase transaction, the Mastros and Plaintiff-Appellee John Momot entered into an allocation agreement (Allocation Agreement) that included an arbitration clause. The Mastros contend that the arbitration clause reserved the question of arbitrability for the arbitrators, and that the district court therefore erred in determining that the dispute was not subject to arbitration. We agree, and hold that the arbitration clause in the Allocation Agreement clearly and unmistakably expresses the parties' intent that the arbitrators determine questions of arbitrability, and that the district court therefore erred in permanently enjoining the arbitration and failing to stay judicial proceedings under section 3 of the FAA.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Momot, a member of the Nevada State Bar since 1974, was an investor in three Mastros restaurants. In early 2007, the Mastros agreed to sell several companies, including the restaurants in which Momot had invested. In connection with the sale, the Mastros, Momot, and other investors entered into the Allocation Agreement, which, among other things, allocated the total purchase price among the selling entities, and included the following arbitration clause:

4.  *Resolution of Disputes*.

(a) *Arbitration*. If a dispute arises out of or relates to this Agreement, the relationships that result from this Agreement, the breach of this Agreement or the validity or application of any of the provisions of this Section 4, and, if the dispute cannot be settled

---

[1]In their related appeal, *Mastro v. Momot*, No. 09-17698, the Mastros contend that the Arizona district court erred in denying their motion to compel arbitration under section 4 of the FAA, 9 U.S.C. § 4. We address that issue in a memorandum disposition filed contemporaneously with this opinion.

through negotiation, the dispute shall be resolved exclusively by binding arbitration. A Party may submit the dispute to binding arbitration administered by the American Arbitration Association under the Commercial Arbitration Rules upon notice to the other Party subject to the dispute . . . .

The asset sale closed on May 15, 2007. Several months later, Momot's counsel contacted the Mastros to complain about the portion of the aggregate purchase price realized from the sale that had been allocated to the three companies in which Momot had invested. The Mastros' counsel responded that under the Allocation Agreement, any such disputes must be arbitrated. Nevertheless, Momot sued the Mastros in Nevada state court on April 16, 2009, alleging that they had taken "steps over a number of years designed to increase their own profits from the restaurant enterprises and diminish any profits that would be realized by private investors, including Momot." The complaint alleged breach of fiduciary duty, accounting, conversion, theft and embezzlement, monies owed, civil conspiracy, civil RICO, failure to register securities, fraud, and usurped corporate opportunity.

On May 19, 2009, the Mastros initiated arbitration proceedings with the American Arbitration Association. On May 20, 2009, they filed a petition in the United States District Court for the District of Arizona, seeking an order under section 4 of the FAA compelling Momot to arbitrate his claims and staying the Nevada suit under section 3 of the FAA. Next, the Mastros removed Momot's state-court action to the United States District Court for the District of Nevada based on diversity jurisdiction, and filed a motion under section 3 of the FAA to dismiss or stay the litigation so removed.

On July 9, 2009, the Arizona district court denied the Mastros' motion for a temporary restraining order and preliminary injunction staying the Nevada litigation. In so doing, the court first noted that "the Nevada action was filed first and

there is no obvious reason of economy to proceed here in spite of that action and, for all intents and purposes, to enjoin that action from proceeding," especially since the court had no reason "to assume that the Nevada court is unable to police its own jurisdiction and stay its proceedings or transfer venue as necessary." Second, the court held that the Mastros had not demonstrated a threat of irreparable harm that would justify the issuance of a preliminary injunction, because they had shown no likelihood that the Nevada district court would fail to require the arbitration to proceed, assuming such a course of action was legally correct, or that Momot would refuse to participate in arbitration. Finally, the court concluded that "granting the requested relief would be an encouragement of forum shopping." Because it concluded the Mastros "would have no entitlement to a Temporary Restraining Order or Preliminary Injunction from this Court under *any* arbitration agreement," it found it "unnecessary to consider the likely merits of [the Mastros'] Petition to Compel Arbitration at that stage of the proceedings."

Meanwhile, in the Nevada district court, Momot filed an emergency motion seeking an order denying the Mastros' motion to dismiss, which the court denied. Instead, on August 14, 2009, the Nevada district court handed down an injunction temporarily staying the Arizona arbitration so that the court "may review the parties' forthcoming simultaneous response briefs . . . and more fully consider the nature and scope of its jurisdiction over this case and the nature and scope of any related arbitration." The Mastros appealed the Nevada district court's temporary injunction to this court.

On July 21, 2009, the Mastros filed a motion to compel arbitration in the Arizona district court. On November 24, 2009, the Arizona district court denied the motion, noting that normally it would "have very little discretion when deciding petitions to compel arbitration," but concluding that "given the procedural morass the parties have created, granting Petitioner's request to compel arbitration would only further com-

plicate matters." In so concluding, the court cited the Nevada district court's August 14, 2009 order staying the arbitration, and noted, "even if this Court were to grant the petition to compel arbitration, the arbitration would not continue until the Nevada Court or the Ninth Circuit takes further action. There is no need to compel arbitration when another court has stayed that arbitration."

On February 4, 2010, the Nevada district court ordered that Momot's claims be adjudicated in court and issued a permanent injunction staying arbitration proceedings in Arizona. The court first noted, "Because the parties admit the Allocation Agreement contains an arbitration clause, the Court must simply decide whether Momot's claims fall within the scope of the agreement." It concluded, however:

> Despite the general presumption in favor of arbitration, the Court can say with positive assurance that Momot's claims are not governed by the Allocation Agreement. . . . Momot's claims do not arise out of or relate to the agreement because they arise out of the Mastros' alleged mishandling of his investment funds prior to the Mastros' decision to sell their restaurants. . . . Because Momot's claims do not arise out of or relate to the Allocation Agreement, he is not required to submit his claims to arbitration and this Court has jurisdiction to adjudicate this lawsuit.

Because the court ordered arbitration proceedings in Arizona terminated, it denied as moot the Mastros' motion to stay enforcement of the injunction.

On April 14, 2010, we dismissed as moot the Mastros' appeal of the temporary injunction. The Mastros now timely appeal the district court's issuance of a permanent injunction and its failure to stay the suit under section 3 of the FAA.

## STANDARD OF REVIEW AND JURISDICTION

We review de novo the district court's decisions about the arbitrability of claims. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999). Because "[a] district court's decision to grant a permanent injunction involves factual, legal, and discretionary components," we review a decision to grant such relief under several different standards. *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998). We review legal conclusions underlying the decision de novo, factual findings for clear error, and the scope of injunctive relief for an abuse of discretion. *Id.*

We have jurisdiction under 28 U.S.C. § 1292(a)(1) and 9 U.S.C. § 16(a)(1)(A).

## DISCUSSION

The Mastros argue that the Nevada district court erred in issuing a permanent injunction terminating the pending Arizona arbitration, and in failing to stay the suit pending arbitration under section 3 of the FAA.[2] Because we hold that the Allocation Agreement clearly and unmistakably indicates the parties' intent to arbitrate the question of arbitrability, we reverse and remand.

**[1]** Because arbitration is fundamentally a matter of contract, "the central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.' " *Stolt-Nielsen S.A. v. AnimalFeeds*

---

[2]Momot contends that these questions are not properly before us because we previously found the same issue to be moot. However, the previous appeal was moot because the preliminary injunction that was the subject of that appeal was no longer in effect. In contrast, the Mastros now appeal issuance of the permanent injunction, and relief remains available in that setting because the claim has not "lost its character as a present, live controversy." *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997).

*Int'l Corp.*, 130 S. Ct. 1758, 1773 (2010) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). Thus, "[w]hether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must 'give effect to the contractual rights and expectations of the parties.' " *Stolt-Nielsen S.A.*, 130 S. Ct at 1773-74 (quoting *Volt*, 489 U.S. at 479). In conducting that analysis, "as with any other contract, the parties' intentions control." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

**[2]** Section 2 of the FAA, the "primary substantive provision of the Act," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA also establishes procedures by which federal courts implement section 2's substantive rule. Thus, section 4 of the FAA provides that a court "shall" order arbitration, on petition of a party, "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. Section 3 provides that a court "shall . . . stay the trial of the action," on petition of a party, "upon any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3.

Accordingly, whether the Nevada district court should have stayed judicial proceedings pending arbitration turns on whether the parties agreed to arbitrate their dispute. Generally, when examining an arbitration contract, "the [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

Certain issues, however—the kind that "contracting parties would likely have expected a court to have decided"—remain within the province of judicial review. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). Such issues concern gateway questions of arbitrability, such as whether the parties have a valid arbitration agreement or are bound by a given arbitration clause, and whether an arbitration clause in a concededly binding contract applies to a given controversy. *See Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion); *Howsam*, 537 U.S. at 84. But,

> the law treats silence or ambiguity about the question "*who* (primarily) should decide arbitrability" differently from the way it treats silence or ambiguity about the question "*whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement"—for in respect to this latter question the law reverses the presumption.

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995). This is so because questions about the scope of an agreement arise when the parties have entered into an agreement providing for the arbitration of some issues, and therefore presumably have contemplated that an arbitrator will decide at least some disputes. *See id.* at 945. Given the general presumption in favor of arbitration, "one can understand why the law would insist upon clarity before concluding that the parties did *not* want to arbitrate a related matter." *Id.* In contrast,

> given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, . . . courts might hesitate to interpret silence or ambiguity on the "who should decide arbitrability" point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reason-

ably would have thought a judge, not an arbitrator, would decide.

*Id.*

**[3]** Although gateway issues of arbitrability presumptively are reserved for the court, the parties may agree to delegate them to the arbitrator. *See, e.g.*, *Howsam*, 537 U.S. at 83-85; *Green Tree Fin. Corp.*, 539 U.S. at 452. The Supreme Court recently reaffirmed this principle in *Rent-A-Center, West, Inc. v. Jackson*, holding that courts must enforce the parties' "agreement to arbitrate threshold issues" regarding the arbitrability of their dispute, and may do so by staying federal litigation under section 3 of the FAA or compelling arbitration under section 4. 130 S. Ct. 2772, 2777-78 (2010).

Because such issues would otherwise fall within the province of judicial review, we apply a more rigorous standard in determining whether the parties have agreed to arbitrate the question of arbitrability. Rather than applying "ordinary state-law principles that govern the formation of contracts" as we would when determining, for example, the scope of a concededly binding contract, the Supreme Court has cautioned that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *First Options of Chicago, Inc.*, 514 U.S. at 944 (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986) (alterations omitted)).

**[4]** Accordingly, the question of arbitrability is left to the court unless the parties clearly and unmistakably provide otherwise. Such "[c]lear and unmistakable 'evidence' of agreement to arbitrate arbitrability might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so." *Rent-A-Center*, 130 S. Ct. at 2783 (Stevens, J., dissenting) (citing *First Options of Chicago, Inc.*, 514 U.S. at 946). Here, there is no evidence that the parties engaged in conduct demonstrating assent, so we turn to the terms of their

agreement. As previously noted, the arbitration clause in the Allocation Agreement provides, in relevant part:

> 4. *Resolution of Disputes.*
>
> (a) *Arbitration.* If a dispute arises out of or relates to this Agreement, the relationships that result from this Agreement, the breach of this Agreement *or the validity or application of any of the provisions of this Section 4*, and, if the dispute cannot be settled through negotiation, the dispute shall be resolved exclusively by binding arbitration.

(Emphasis added.) We hold that this language, delegating to the arbitrators the authority to determine "the validity or application of any of the provisions of" the arbitration clause, constitutes "an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Center*, 130 S. Ct. at 2777. In other words, the parties clearly and unmistakably agreed to arbitrate the question of arbitrability.

**[5]** Because the parties' agreement clearly and unmistakably indicates their intent for the arbitrators to decide the threshold question of arbitrability, we hold that the district court erred in failing to stay the action under section 3 of the FAA and in enjoining the arbitration.

**REVERSED AND REMANDED with instructions to grant the motion to stay proceedings under 9 U.S.C. § 3 and dissolve the permanent injunction.**