FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ABDUL KADIR MOHAMED, individually and on behalf of all others similarly situated, *Plaintiff-Appellee*, <br><br> v. <br><br> UBER TECHNOLOGIES, INC.; RASIER, LLC, *Defendants-Appellants*, <br><br> and <br><br> HIREASE, LLC, *Defendant.* | No. 15-16178 <br><br> D.C. No. 3:14-cv-05200-EMC |

| | |
|---|---|
| RONALD GILLETTE, *Plaintiff-Appellee*, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., *Defendant-Appellant.* | No. 15-16181 <br><br> D.C. No. 3:14-cv-05241-EMC |

ABDUL KADIR MOHAMED,
individually and on behalf of all
others similarly situated,
                *Plaintiff-Appellee*,

            v.

UBER TECHNOLOGIES, INC.;
RASIER, LLC,
                *Defendants*,

            and

HIREASE, LLC,
                *Defendant-Appellant.*

No. 15-16250

D.C. No.
3:14-cv-05200-EMC

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted June 16, 2016
San Francisco, California

Filed September 7, 2016
Amended December 21, 2016

Before: Richard C. Tallman, Richard R. Clifton, and
Sandra S. Ikuta, Circuit Judges.

Order;
Opinion by Judge Clifton

# SUMMARY[*]

## Arbitration / California Private Attorney General Act

The panel affirmed in part and reversed in part the district court's orders denying Uber Technologies, Inc.'s motion to compel arbitration in actions brought by two former Uber drivers, Abdul Mohamed and Ronald Gillette, on behalf of themselves and a proposed class of drivers, and remanded for further proceedings.

The district court denied Uber's motion to compel arbitration of the plaintiffs' claims.

The panel held that the district court erred in assuming the authority to decide whether the parties' arbitration agreements were enforceable. The panel further held that the question of arbitrability as to all but Gillette's California Private Attorney General Act ("PAGA") claim was delegated to the arbitrator. The panel also held that under the terms of the agreement Gillette signed, the PAGA waiver should be severed from the arbitration agreement and Gillette's PAGA claim may proceed in court on a representative basis. The panel also held that all of plaintiffs' remaining arguments, including both Mohamad's challenge to the PAGA waiver in the agreement he signed and the challenge by both plaintiffs to the validity of the arbitration agreement itself, were subject to resolution via arbitration.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel affirmed the district court's order denying the motion to compel arbitration filed by Hirease, LLC, an independent background-check company that Mohamed named in his complaint alongside Uber. The panel held that Hirease was not entitled to compel arbitration as Uber's agent.

## COUNSEL

Theodore Boutrous, Jr. (argued), Theane D. Evangelis, and Brandon J. Stoker, Gibson, Dunn & Crutcher LLP, Los Angeles, California; Joshua S. Lipshutz and Kevin J. Ring-Dowell, Gibson, Dunn & Crutcher LLP, San Francisco, California; Rod M. Fliegel, Littler Mendelson P.C., San Francisco, California; Andrew M. Spurchise, Littler Mendelson P.C., New York, New York; for Defendants-Appellants Uber Technologies, Inc. and Rasier, LLC.

Pamela Devata (argued) and Nicholas R. Clements, Seyfarth Shaw LLP, San Francisco, California; Timothy L. Hix, Seyfarth Shaw LLP, Los Angeles, California; for Defendant-Appellant Hirease, LLC.

Laura Ho (argued), Andrew P. Lee, and William Jhaveri-Weeks, Goldstein Borgen Dardarian & Ho, Oakland, California; Robert Ahdoot, Tina Wolfson, and Theodore Maya, Ahdoot & Wolfson, PC, West Hollywood, California; Meredith Desautels, Dana Isaac Quinn, and Elisa Della-Piana, Lawyers' Committee for Civil Rights of the San Francisco Bay Area, San Francisco, California; Monique Olivier, Duckworth Peters Lebowitz Olivier LLP, San Francisco, California; for Plaintiffs-Appellees.

Kevin Ranlett, Archis A. Parasharami, Evan M. Tager, and Andrew J. Pincus, Mayer Brown LLP, Washington, D.C.; Warren Postman and Kate Comerford Todd, U.S. Chamber Litigation Center, Inc., Washington, D.C.; for Amicus Curiae Chamber of Commerce of the United States.

Matthew C. Koski, National Employment Lawyers Association, Oakland, California; David H. Seligman, Towards Justice, Denver, Colorado; Jahan C. Sagafi, Outten & Golden LLP, San Francisco, California; for Amici Curiae National Employment Law Project, National Employment Lawyers Association, National Association of Consumer Advocates, and Towards Justice.

## ORDER

The opinion filed on September 7, 2016, is hereby amended as follows:

1. On page 18 of the slip opinion, in footnote 6, the last sentence (and related citations) should be deleted.

> We note that Plaintiffs also raised the argument that the class and collective action waivers in the arbitration agreements may violate the National Labor Relations Act (NLRA) for the first time in a sur-reply. That untimely submission waived the argument. See, e.g., *United States v. Dreyer*, 804 F.3d 1266, 1277 (9th Cir. 2015) ("Generally, an appellee waives any argument it fails to raise in its answering brief.").

With this amendment, the panel has voted to deny the petition for rehearing en banc. The Petition for Rehearing En Banc has been circulated to the full court, and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition rehearing en banc is **DENIED**. No further petition for rehearing may be filed.

---

## OPINION

CLIFTON, Circuit Judge:

Plaintiff-Appellees Abdul Mohamed and Ronald Gillette, former Uber drivers, filed an action in district court alleging on behalf of themselves and a proposed class of other drivers that Defendants Uber Technologies, Inc., Rasier, LLC, and Hirease, LLC, violated the Fair Credit Reporting Act (FCRA) and various state statutes. Gillette has also brought a representative claim against Uber under California's Private Attorneys General Act of 2004 (PAGA) alleging that he was misclassified as an independent contractor rather than an employee. The district court denied Uber's motion to compel arbitration of the claims. *Mohamed v. Uber Technologies*, 109 F. Supp. 3d 1185 (N.D. Cal. 2015). Uber argues on appeal (1) that the district court erroneously considered whether the arbitration provisions were enforceable when that question was clearly delegated to an arbitrator, and (2) that even if the district court properly considered arbitrability, it erred in concluding that the arbitration provisions were invalid and in declining to compel arbitration.

We conclude that the district court erred at the first step and improperly assumed the authority to decide whether the arbitration agreements were enforceable. The question of arbitrability as to all but Gillette's PAGA claims was delegated to the arbitrator. Under the terms of the agreement Gillette signed, the PAGA waiver should be severed from the arbitration agreement and Gillette's PAGA claims may proceed in court on a representative basis. All of Plaintiffs' remaining arguments, including both Mohamed's challenge to the PAGA waiver in the agreement he signed and the challenge by both Plaintiffs to the validity of the arbitration agreement itself, are subject to resolution via arbitration.

## I.  Background

Plaintiff Abdul Mohamed began driving for Uber's black car service in Boston in 2012, and for UberX[1] around October 2014. Like all Uber drivers, Mohamed used a smartphone to access the Uber application while driving, which enabled him to pick up customers.

In late July 2013, Mohamed was required to agree to two new contracts with Uber (the "Software License and Online Services Agreement" and the "Driver Addendum"; jointly, the "2013 Agreement") before he was allowed to sign in to the application. The 2013 Agreement provided that it was governed by California law. It included an arbitration provision requiring Uber drivers to submit to arbitration to resolve most disputes with the company. It also included a

---

[1] An Uber black car is a commercially registered livery car that passengers can access using the Uber smartphone application. UberX is a lower-cost alternative in which drivers use their own cars to pick up passengers via the app.

provision requiring drivers to waive their right to bring disputes as a class action, a collective action, or a private attorney general representative action. Drivers could opt out of arbitration by delivering notice of their intent to opt out to Uber within 30 days either in person or by overnight delivery service. Mohamed accepted the agreements and did not opt out.

Nearly a year later, in June 2014, Uber released an updated version of the Software License and Online Services Agreement and the Driver Addendum (jointly, the "2014 Agreement"). The 2014 Agreement also provided that it was governed by California law. It included an updated arbitration provision with an easier opt-out procedure that enabled drivers to opt out via e-mail as well as in person or by delivery service. It also included a provision requiring all disputes with the company "to be resolved only by an arbitrator through final and binding arbitration on an individual basis only, and not by way of court or jury trial, or by way of class, collective, or representative action." Mohamed accepted these agreements and did not opt out. In early October 2014, Mohamed accepted a similar agreement with Rasier, a wholly owned subsidiary of Uber ("Rasier Software Sublicense & Online Services Agreement" (Rasier Agreement)).**[2]**

In late October 2014, shortly after he began driving for UberX, Mohamed's access to the app was cut off due to

---

**[2]** Except where necessary, this opinion refers to Uber and Rasier collectively as "Uber." The Rasier Agreement contained terms similar to those in the Software License and Online Services Agreement, and neither party has alleged any arguments specific to the Rasier Agreement. Thus, we treat it as part of the 2014 Agreement.

negative information on his consumer credit report, effectively terminating his ability to drive for Uber.

Plaintiff-Appellant Ronald Gillette began driving for Uber in the San Francisco Bay Area in March 2013. Like Mohamed, he was required to agree to the 2013 Agreement before signing into the Uber application in late July 2013. Also like Mohamed, he did not opt out. In April 2014, Gillette's access to the app was cut off because of negative information on his consumer credit report. This effectively terminated his relationship with Uber.

On November 24, 2014, Mohamed filed a class action in the Northern District of California against Uber, Rasier, and Hirease, an independent company that conducted background checks. Mohamed alleged that the use of his consumer credit report violated the FCRA, the Massachusetts Consumer Credit Reporting Act (MCCRA), and the California Consumer Credit Reporting Agencies Act (CCRAA). Two days later, on November 26, 2014, Gillette filed a separate lawsuit against Uber, also in the Northern District of California. Gillette alleged that the company's use of his consumer credit report violated the FCRA and the California Investigative Consumer Reporting Agencies Act (ICRAA). He also alleged that Uber had misclassified him and other employees as independent contractors in violation of California's PAGA statute.

Uber moved to compel arbitration in both lawsuits, arguing that Gillette was bound by the arbitration provision in the 2013 Agreement and Mohamed by the arbitration provision in the 2014 Agreement. The district court denied both motions, *Mohamed*, 109 F. Supp. 3d at 1190, and Uber now appeals.

## II. Discussion

We review de novo an order denying a motion to compel arbitration. *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013).

Both the 2013 and the 2014 Agreements contained provisions that provided, using very similar language, that disputes would be resolved by arbitration and, further, that any dispute as to arbitrability (with one exception discussed below) would be resolved by the arbitrator.  These provisions stated:

> Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration.  This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial.[3]
>
> Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration

---

[3] In the 2014 Agreement, this sentence read: "This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action.

Provision or any portion of the Arbitration Provision.

The 2014 Agreement continued: "All such matters shall be decided by an Arbitrator and not by a court or judge."

Both the 2013 and 2014 Agreements also contained provisions that required drivers to waive the right to bring class, collective, and representative actions (including claims under the PAGA statute), either in court or in arbitration. The 2013 Agreement, but not the 2014 Agreement, carved out challenges to these waivers from the general delegation provision: "Notwithstanding any other clause contained in this Agreement, any claim that all or part of the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is invalid, unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator."

The district court concluded that the delegation clauses in both the 2013 and the 2014 Agreements were ineffective because they were not clear and unmistakable. *Mohamed*, 109 F. Supp. 3d at 1198–1204. The court also concluded that even if the delegation clauses were clear and unmistakable, they were unenforceable because they were unconscionable. *Id.* at 1204–16. We disagree. The 2013 Agreement clearly and unmistakably delegated the question of arbitrability to the arbitrator except as pertained to the arbitrability of class action, collective action, and representative claims. The 2014 Agreement clearly and unmistakably delegated the question of arbitrability to the arbitrator under all circumstances. Neither delegation provision was unconscionable. Thus, all of Plaintiffs' challenges to the enforceability of the arbitration agreement, save Gillette's challenge to the enforceability of

the PAGA waiver in the 2013 Agreement, should have been adjudicated in the first instance by an arbitrator and not in court.

## A. Delegation of the issue of arbitrability

"[U]nlike the arbitrability of claims in general, whether the court or the arbitrator decides arbitrability is 'an issue for judicial determination unless the parties *clearly and unmistakably provide otherwise.*'" *Oracle Am.*, 724 F.3d at 1072 (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). "In other words, there is a presumption that courts will decide which issues are arbitrable; the federal policy in favor of arbitration does not extend to deciding questions of arbitrability." *Id.* Clear and unmistakable evidence of an agreement to arbitrate arbitrability "might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so." *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 79–80 (2010) (Stevens, J., dissenting)).

In *Momot*, we held that language "delegating to the arbitrators the authority to determine the validity or application of any of the provisions of the arbitration clause[] constitutes an agreement to arbitrate threshold issues concerning the arbitration agreement." *Id.* (quoting *Rent-A-Ctr.*, 561 U.S. at 68) (internal quotation marks omitted). Here, both the 2013 and the 2014 Agreements delegated to the arbitrators the authority to decide issues relating to the "enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision." This language is similar to but more expansive than the language at issue in *Momot*, and thus also "clearly and unmistakably

indicates [the parties'] intent for the arbitrators to decide the threshold question of arbitrability." *Id.*[4]

The district court determined that the delegation provisions themselves were "unambiguous," but it nonetheless held that they conflicted with venue provisions elsewhere in the 2013 and 2014 Agreements. *Mohamed*, 109 F. Supp. 3d at 1199. Both venue provisions stated that "any disputes, actions, claims, or causes of action arising out of or in connection with this Agreement or the Uber Service or Software shall be subject to the exclusive jurisdiction of the state and federal courts located in the City and County of San Francisco." The district court concluded that the language in the venue provisions granting state or federal courts in San Francisco "exclusive jurisdiction" over "any disputes, actions, claims or causes of action arising out of or in connection with this Agreement" was "inconsistent and in considerable tension with the language of the delegation clauses, which provide[d] that 'without limitation' arbitrability will be decided by an arbitrator." *Id.* at 1201. The court also identified an inconsistency between the "without limitation" language and the carve-out provision in the 2013 Agreement granting courts jurisdiction over challenges to the PAGA waiver. *Id.* at 1201–02.

These conflicts are artificial. The clause describing the scope of the arbitration provision was prefaced with "[e]xcept as it otherwise provides," which eliminated the inconsistency

---

[4] The arbitration agreements may not have clearly and unmistakably delegated to the arbitrator the authority to decide the question of waiver by litigation conduct. *See Martin v. Yasuda*, No. 15-55696, 2016 WL 3924381, at *5 (9th Cir. July 21, 2016). But that question is not at issue in this litigation.

between the general delegation provision and the specific carve-out in the 2013 Agreement. As for the venue provision, the California Court of Appeal has observed that "[n]o matter how broad the arbitration clause, it may be necessary to file an action in court to enforce an arbitration agreement, or to obtain a judgment enforcing an arbitration award, and the parties may need to invoke the jurisdiction of a court to obtain other remedies." *Dream Theater, Inc. v. Dream Theater*, 21 Cal. Rptr. 3d 322, 328 (Cal. Ct. App. 2004), *as modified on denial of reh'g* (Dec. 28, 2004). It is apparent that the venue provision here was intended for these purposes, and to identify the venue for any other claims that were not covered by the arbitration agreement. That does not conflict with or undermine the agreement's unambiguous statement identifying arbitrable claims and arguments.

The delegation provisions clearly and unmistakably delegated the question of arbitrability to the arbitrator for all claims except challenges to the class, collective, and representative action waivers in the 2013 Agreement. In accordance with Supreme Court precedent, we are required to enforce these agreements "according to their terms" and, in the absence of some other generally applicable contract defense, such as fraud, duress, or unconscionability, let an arbitrator determine arbitrability as to all but the claims specifically exempted by the 2013 Agreement. *Rent-A-Ctr.*, 561 U.S. at 67.

## B. *The delegation provisions were not unconscionable*

The district court also held that, even if the delegation provisions were clear and unmistakable, they were both unenforceable due to unconscionability. *Mohamed*, 109 F. Supp. 3d at 1204–16. Under California law,

"'unconscionability has both a 'procedural' and a 'substantive' element,' the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000) (quoting *A & M Produce Co. v. FMC Corp.*, 186 Cal. Rptr. 114, 121–22 (Cal. Ct. App. 1982)).  Both substantive and procedural unconscionability must be present in order for a court to find a contract unconscionable, but "they need not be present in the same degree." *Id.*  Recently, the California Supreme Court has emphasized that "unconscionability requires a substantial degree of unfairness *beyond 'a simple old-fashioned bad bargain.*'" *Baltazar v. Forever 21, Inc.*, 367 P.3d 6, 12 (Cal. 2016) (quoting *Sonic-Calabasas A, Inc. v. Moreno*, 311 P.3d 184, 291 (Cal. 2013)).  Rather, unconscionable contracts are those that are "so one-sided as to 'shock the conscience.'" *Id.* at 11 (quoting *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 282 P.3d 1217, 1232 (Cal. 2012)). When considering an unconscionability challenge to a delegation provision, the court must consider only arguments "specific to the delegation provision." *Rent-A-Ctr.*, 561 U.S. at 73

The district court concluded that the delegation provisions in both the 2013 and 2014 Agreements were procedurally and substantively unconscionable.  For the 2013 Agreement, the court concluded that the provision was procedurally unconscionable because it was "hidden in a prolix printed form," *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006) (en banc) (quoting *Flores v. Transamerica HomeFirst, Inc.*, 113 Cal. Rptr. 2d 376, 381 (Cal. Ct. App. 2001)), and because there was no meaningful opportunity for the drivers to reject the contract. *Mohamed*, 109 F. Supp. 3d at 1205–06.  For the 2014 Agreement, the court concluded

that the delegation provision was procedurally unconscionable because "the 2014 agreement[] utterly failed to notify drivers of a specific drawback of the delegation clause—namely, that drivers may be required to pay considerable forum fees to arbitrate arbitrability," and because employees likely felt at least some pressure not to opt out of arbitration despite the presence of a clear opt-out provision. *Id.* at 1215–16. The court also concluded that both the 2013 and 2014 Agreements were substantively unconscionable because they required arbitration costs and fees to be shared equally between Uber and the driver. *Id.* at 1206–10, 1216. As a result, it concluded that both delegation provisions should be invalidated. *Id.* at 1210, 1216.

Uber argues that the delegation provisions could not have been procedurally unconscionable because both agreements gave drivers an opportunity to opt out of arbitration altogether. The district court agreed with Uber that, under Ninth Circuit precedent, "the existence of a meaningful right to opt-out of [arbitration] necessarily renders [the arbitration clause] (and the delegation clause specifically) procedurally conscionable as a matter of law." *Id.* at 1212. As to the 2013 Agreement, the court concluded that the right to opt out was not "meaningful" because drivers were required to opt out either in person at Uber's San Francisco offices or by overnight delivery service, both of which were so burdensome as to make the opt-out right "illusory." *Id.* at 1206. As to the 2014 Agreement, which contained a much less burdensome opt-out procedure, the court held that our precedent "failed to apply California law as announced by the

California Supreme Court," and as such, declined to apply it.[5] *Id.* at 1212.

The district court does not have the authority to ignore circuit court precedent, and neither do we. "Binding authority must be followed unless and until overruled by a body competent to do so." *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001); *see Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc) (identifying the limited circumstances when a three-judge panel of this court is not bound by our precedent). In *Nagrampa*, we determined that "[t]he threshold inquiry in California's unconscionability analysis is 'whether the arbitration agreement is adhesive.'" 469 F.3d at 1281 (quoting *Armendariz*, 6 P.3d at 690). In *Circuit City Stores, Inc. v. Ahmed*, we held that an arbitration agreement is not adhesive if there is an opportunity to opt out of it. 283 F.3d 1198, 1199 (9th Cir. 2002); *see also Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013) (en banc). Taken together, these two principles compel us to find that the 2014 Agreement, at least, is not adhesive, which supports our holding that the delegation provision is not unconscionable.

The district court's conclusion that the right to opt out of the 2013 Agreement was illusory fares no better. "An

---

[5] The district court order cited several of our decisions, culminating with *Kilgore v. Key Bank, Nat'l Ass'n*, 718 F.3d 1052 (9th Cir. 2013) (en banc), acknowledging that they supported Uber's position. *Mohamed*, 109 F. Supp. 3d at 1212. Nonetheless, the order stated that the district court "cannot follow the Ninth Circuit cases cited by Uber in the face of directly contradicting California Supreme Court authority." *Id.* The California authority cited in the order preceded our decision in *Kilgore*, so the court's decision to ignore our precedent cannot be explained by any intervening California authority.

illusory promise is one containing words 'in promissory form that promise nothing' and which 'do not purport to put any limitation on the freedom of the alleged promisor.'" *Flores v. Am. Seafoods Co.*, 335 F.3d 904, 912 (9th Cir. 2003) (quoting 2 Corbin on Contracts 142 (rev. ed. 1995)). While we do not doubt that it was more burdensome to opt out of the arbitration provision by overnight delivery service than it would have been by e-mail, the contract bound Uber to accept opt-outs from those drivers who followed the procedure it set forth. There were some drivers who did opt out and whose opt-outs Uber recognized. Thus, the promise was not illusory. The fact that the opt-out provision was "buried in the agreement" does not change this analysis. *Mohamed*, 109 F.Supp. 3d at 1205. As we noted in *Ahmed*, "one who signs a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument." 283 F.3d at 1200 (quoting *Madden v. Kaiser Found. Hosps.*, 552 P.2d 1178, 1185 (Cal. 1976)).

The delegation provisions were not procedurally unconscionable in either the 2013 or the 2014 Agreements. Because the agreements were not procedurally unconscionable, and because both procedural and substantive unconscionability must be present in order for an agreement to be unenforceable, *see Armendariz*, 6 P.3d at 690, we need not reach the question whether the agreements here were substantively unconscionable. The district court should have ordered the parties to arbitrate their dispute over arbitrability (with a narrow exception for the argument over the PAGA

waiver in the 2013 Agreement, as discussed below), and we remand with instructions that it do so.**[6]**

## C. *The effective vindication doctrine*

Plaintiffs also argue that even if the delegation provisions are otherwise enforceable, they are invalid because both the 2013 and 2014 Agreements contain a fee term requiring drivers to split the costs of arbitration equally with Uber and thus preclude drivers from effectively vindicating their federal statutory rights. Effective vindication provides courts with a means to "invalidate, on 'public policy' grounds, arbitration agreements that 'operat[e] . . . as a prospective waiver of a party's *right to pursue* statutory remedies.'" *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n. 19 (1985)). In *Italian Colors*, the Supreme Court stated that effective vindication may "cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable." *Id.* at 2310–11; *see also Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 927 (9th Cir. 2013) (finding that the effective vindication doctrine was implicated when "administrative and filing costs, even disregarding the cost to prove the merits, effectively foreclose pursuit of the claim"). Evidence submitted by the Plaintiffs suggests that the costs of arbitration in this case may exceed $7,000 per day.

---

**[6]** We note that Plaintiffs also raised the argument that the class and collective action waivers in the arbitration agreements may violate the National Labor Relations Act (NLRA) for the first time in a sur-reply. That untimely submission waived the argument. *See, e.g.*, *United States v. Dreyer*, 804 F.3d 1266, 1277 (9th Cir. 2015) ("Generally, an appellee waives any argument it fails to raise in its answering brief.").

However, Uber has committed to paying the full costs of arbitration. So long as Uber abides by this commitment, the fee term in the arbitration agreement presents Plaintiffs with no obstacle to pursuing vindication of their federal statutory rights in arbitration. As a result, we decline to reach the question of whether the fee term would run afoul of the effective vindication doctrine if it were enforced as written.

## D. The PAGA waiver

Plaintiffs argue that the arbitration provisions in the 2013 and 2014 Agreements were invalid under California law because they both contained unenforceable, unseverable waivers of Plaintiffs' claims under the California PAGA statute. Because we conclude that the district court should not have reached the question of whether the arbitration agreements were enforceable in the first place, it is not necessary to address this argument pertaining to the 2014 Agreement. Plaintiffs' challenges to the enforceability and severability of the PAGA waiver in the 2014 Agreement fall to the arbitrator to decide.

As noted above, however, the 2013 Agreement specifically required the district court, and not the arbitrator, to consider certain challenges to the arbitration provision, including challenges to the enforceability of the PAGA waiver. Because of that carve-out, it remains for us to consider on the merits whether the PAGA waiver in that agreement is enforceable, and what effect the waiver has on the arbitration provision as a whole.

The district court concluded that the arbitration provision in the 2013 Agreement was procedurally unconscionable because it was adhesive, oppressive, and a surprise to drivers

who accepted the agreement, and that it was substantively unconscionable because it contained a PAGA waiver that was unenforceable under California law. *Mohamed*, 109 F. Supp. 3d at 1217–18. The district court also concluded that the PAGA waiver was unseverable from the remainder of the agreement and that "the entirety of the arbitration agreement fails because the PAGA waiver fails." *Id.* at 1218. For the reasons stated above, the district court's holding on unconscionability was erroneous.

Perhaps recognizing that the district court's unconscionability analysis ran counter to existing Ninth Circuit precedent, Plaintiffs argue on appeal that even if the district court erred in finding that the arbitration provision in the 2013 Agreement was unconscionable, the PAGA waiver was still invalid under California law and unseverable from the remainder of the arbitration provision under the terms of the contract. Plaintiffs argue that the invalid PAGA waiver thus dooms the entire arbitration provision, such that claims governed by that agreement (i.e., all of Gillette's claims) must be litigated in court. Although we agree that the PAGA waiver in the 2013 Agreement was invalid under California law, we conclude that it is severable from the remainder of the 2013 agreement.

In *Iskanian v. CLS Transp. L.A., LLC*, 327 P.3d 129 (Cal. 2014), the California Supreme Court held that where "an employment agreement compels the waiver of representative claims under the PAGA, it is contrary to public policy and unenforceable as a matter of state law." *Id.* at 149. We have held that the Federal Arbitration Act does not preempt this rule. *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 427 (9th Cir. 2015). Uber attempts to distinguish this case from *Iskanian* because drivers were able to opt out of the

2013 Agreement, but its effort is unavailing. Drivers presented with the 2013 Agreement were required to make the decision whether or not to opt out within 30 days of receipt, and *Iskanian* made clear that, while employees "are free to choose whether or not to bring PAGA actions when they are aware of Labor Code violations," it is "contrary to public policy for an employment agreement to eliminate this choice altogether by requiring employees to waive the right to bring a PAGA action before any dispute arises." 327 P.3d at 313. Because the PAGA waiver in the 2013 Agreement required employees to make a decision as to whether or not they would preserve their right to bring PAGA claims before they knew any such claims existed, it is unenforceable under *Iskanian* and *Sakkab*.

The PAGA waiver is severable from the remainder of the arbitration provision in the 2013 Agreement, however. In Section 14.1, the agreement provided that "[i]f any provision of the Agreement is held to be invalid or unenforceable, such provision shall be struck and the remaining provisions shall be enforced to the fullest extent under law." In Section 14.3(v), the agreement further provided:

> There will be no right or authority for any dispute to be brought, heard, or arbitrated as a private attorney general representative action ("Private Attorney General Waiver"). The Private Attorney General Waiver shall not be severable from this Arbitration Provision in any case in which a civil court of competent jurisdiction finds the Private Attorney General Waiver is unenforceable. In such instances and where the claim is brought as a private attorney general, such private attorney general

claim must be litigated in a civil court of competent jurisdiction.

While this provision is hardly a model of clarity, the third sentence stated explicitly that PAGA claims are subject to litigation in court, contrary to the district court's conclusion that the PAGA waiver was unseverable from the remainder of the agreement. Finally, in Section 14.3(ix), the agreement provided that "[e]xcept as stated in subsection v, above, in the event any portion of this Arbitration Provision is deemed unenforceable, the remainder of this Arbitration Provision will be enforceable." Reading these ambiguous provisions together, we conclude that in stating that the PAGA waiver and the arbitration provision are not severable, the contract provides that, if the PAGA waiver turned out to be invalid, the arbitration provision would also be invalid as to any PAGA representative claim. Thus, while Plaintiffs' PAGA claim must be litigated in court, the PAGA waiver does not invalidate the remainder of the arbitration provision in the 2013 Agreement, and it should be enforced according to its terms.

## E.  *Hirease cannot compel arbitration*

Plaintiff Mohamed (but not Gillette) named independent background-check company Hirease in his complaint alongside Uber. Hirease moved to join Uber's motion to compel Mohamed into arbitration, though Hirease was not identified as a party or a signatory to the agreement between Uber and the drivers. The district court denied Hirease's joinder in Uber's motion to compel on the same grounds that it denied Uber's motion, without separately discussing the question of whether Hirease was covered by the arbitration provisions. *Mohamed*, 109 F. Supp. 3d at 1237.

On appeal, Hirease argues that it should be covered by the arbitration agreement because: (1) Mohamed has alleged an agency relationship between Hirease and Uber, *see, e.g.*, *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1232–33 (9th Cir. 2013); (2) Hirease and Uber share an "identity of interest," *see, e.g.*, *Jones v. Jacobson*, 125 Cal. Rptr. 3d 522, 537 n.9 (Cal. Ct. App. 2011); and (3) the cause of action alleged against Hirease is "intimately founded in and intertwined with" underlying contract obligations, *Murphy*, 724 F.3d at 1229 (quoting *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013)).

Hirease's first argument rests on the wording of Mohamed's complaint, which alleged generally that Defendants—defined to include Hirease, Uber, Rasier, and unknown Does—knowingly violated the FCRA, MCRA, and CCRAA by failing to provide job applicants and employees with adequate notice regarding the use of their consumer credit reports for employment purposes. The complaint also included allegations that "each named Defendant and DOES 1–50 were the employees, agents, or representatives of each other" and that "[e]ach Defendant has ratified and approved the acts of its agents." Hirease argues that under California law, "a plaintiff's allegations of an agency relationship among defendants is sufficient to allow the alleged agents to invoke the benefit of an arbitration agreement executed by their principal even though the agents are not parties to the agreement." *Thomas v. Westlake*, 139 Cal. Rptr. 3d 114, 121 (Cal. Ct. App. 2012).

As the California Court of Appeal has noted elsewhere, however, "[c]omplaints in actions against multiple defendants commonly include conclusory allegations that all of the defendants were each other's agents or employees and were

acting within the scope of their agency or employment." *Barsegian v. Kessler & Kessler*, 155 Cal. Rptr. 3d 567, 571 (Cal. Ct. App. 2013). If Hirease were correct that such allegations were sufficient to establish an agency relationship for the purpose of compelling arbitration, "in every multi-defendant case in which the complaint contained such boilerplate allegations of mutual agency, as long as *one* defendant had entered into an arbitration agreement with the plaintiff, *every* defendant would be able to compel arbitration, regardless of how tenuous or nonexistent the connections among the defendants might actually be." *Id.* As such, generalized allegations of an agency relationship made in a complaint are not, by themselves, a sufficient ground on which to compel arbitration when "the mutual agency of all defendants is not a judicially admitted fact." *Id.* at 573. There has been no such judicial admission here.

There is no specific indication of an actual agency relationship between Uber and Hirease, either in the complaint or elsewhere in the record. An agency relationship "requires that the principal maintain control over the agent's actions." *Murphy*, 724 F.3d at 1232. Mohamed did not allege any facts suggesting that Uber maintained control over Hirease's actions, or vice versa. Indeed, while the complaint stated four causes of action, Hirease was named in only one of them, for a violation of the MCRA. This claim alleged (1) that Hirease failed to deliver a copy of the consumer report to Plaintiff and other members of the MCRA class as required by Massachusetts General Laws (MGL) ch. 93 § 60,[7]

---

[7] MGL ch. 93 § 60 requires consumer reporting agencies under certain circumstances to:

and (2) that Defendants failed to advise members of the putative MCRA class of their rights under MGL ch. 93 § 62.**[8]** Hirease's alleged violation of MGL ch. 93 § 60 was predicated on its own failure to act, and there is nothing in the complaint to suggest that failure was influenced or controlled by Uber.  Nor is there any indication that Hirease had any role in or control over the alleged failure to advise members of the putative MCRA class of their rights under MGL ch. 93 § 62, which applies to "user[s] of . . . consumer credit reports" such as Uber.  Because Hirease "has presented no evidence, on appeal or before the district court, that [Uber] controlled its behavior in ways relevant to [Mohamed's] allegations," Hirease is not entitled to compel arbitration as Uber's agent. *Murphy*, 724 F.3d at 1233.

---

notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date.

It also requires consumer reporting agencies to "enter into an agreement with the user of such consumer report which provides that no consumer report may be requested by the user until and unless the user has provided written notice to the employee or prospective employee that a consumer report regarding the employee will be requested." *Id.*

**[8]** MGL ch. 93 § 62 provides in relevant part that "[w]henever . . . employment involving a consumer is denied or terminated . . . because of information contained in a consumer report from a consumer reporting agency, the user of the consumer report shall . . . notify such consumer in writing against whom such adverse action has been taken."

In the same vein, there is no indication in the complaint that Uber and Hirease share an identity of interest, which Black's Law Dictionary defines as "[a] relationship between two parties who are so close that suing one serves as notice to the other." (10th ed. 2014). Because Hirease's liability stems from its own alleged violation of Massachusetts law, independent of any actions Uber may or may not have taken, there is no such relationship here.

Finally, the allegations Mohamed leveled against Hirease were not "intimately founded in and intertwined with" the underlying contract obligations established in the 2014 Agreement. *Murphy*, 724 F.3d at 1229 (quoting *Kramer*, 705 F.3d at 1128). The rule requiring enforcement of an arbitration agreement under such circumstances "reflects the policy that a plaintiff may not, 'on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory.'" *Id.* (quoting *Goldman v. KPMG LLP*, 92 Cal. Rptr. 3d 534, 543 (Cal. Ct. App. 2009)). Non-signatories can enforce arbitration agreements when they are being sued "for 'claims that are based on the same facts and are inherently inseparable from arbitrable claims,'" *id.* at 1231 (quoting *Metalclad Corp. v. Ventana Envtl. Org. P'Ship*, 1 Cal. Rptr. 3d 328, 334 (Cal. Ct. App. 2003)), but

> [m]ere allegations of collusive behavior between signatories and non[-]signatories to a contract are not enough to compel arbitration between parties who have not agreed to arbitrate: those allegations of collusive behavior must also establish that the plaintiff's claims against the nonsignatory are

intimately founded in and intertwined with the obligations imposed by the contract containing the arbitration clause.*Id.* (quoting *Goldman*, 92 Cal. Rptr. 3d at 545). Here, the claims against Hirease arise under the MCRA and not out of obligations imposed by the 2014 Agreement. Therefore, the rule that an arbitration agreement can be enforced by a non-signatory when the allegations against the non-signatory are intimately founded in and intertwined with underlying contract obligations does not apply.

## III.    Conclusion

We affirm in part and reverse the district court's order denying Uber's motions to compel arbitration and remand for proceedings consistent with this opinion.

We affirm the district court's order denying Hirease's joinder in the motion to compel.

All parties shall bear their own costs.

**AFFIRMED** in part, **REVERSED** in part, and **REMANDED**.